**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ZIMMER TECHNOLOGY, INC. and | ) | |
| ZIMMER, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:02-CV-425 |
| | ) | |
| HOWMEDICA OSTEONICS CORP. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM, ORDER & OPINION</u>

This matter is before the Court on the Motion for Partial Summary Judgment
on Howmedica's Invalidity Defense and Counterclaim and Motion for Summary
Judgment on Howmedica's Estoppel Defense (Docket No. 183) filed by Plaintiffs,
Zimmer Technology, Inc. and Zimmer, Inc. (collectively, "Zimmer").  This matter is also
before the Court on the Motion for Summary Judgment (Docket No. 216) and the Motion
for Summary Judgment of Invalidity (Docket No. 217) filed by the Defendant,
Howmedica Osteonics Corp. ("Howmedica").  Oral arguments were heard on these
motions in South Bend, Indiana on March 16, 2006 and August 17, 2006, and the issues
have been fully briefed.

### I.  Jurisdiction

Howmedica is a New Jersey corporation with its principal place of business in
New Jersey.  First Amended Complaint ¶ 3.  It is a wholly-owned subsidiary of the
Stryker Corporation of Kalamazoo, Michigan, which designs, manufactures, and sells

medical products, including prosthetic implants.  *Id.*  Zimmer Technology, Inc. is a

Delaware corporation with its principal place of business in Chicago, Illinois.  *Id*. at ¶ 1.

Zimmer, Inc. is a Delaware corporation with its principal place of business in Warsaw,

Indiana.  *Id*. at ¶ 2.  Collectively, Zimmer Technology, Inc. and Zimmer, Inc. design,

manufacture, and sell medical products, including prosthetic implants.  This Court's

jurisdiction is based on 28 U.S.C. § 1338(a).  Venue is based on 28 U.S.C. §§ 1391(b)

and (c).

## II.  Procedural History

On April 3, 2003, the Court denied Zimmer's Motion for Summary Judgment of

Infringement of U.S. Patent No. 5,290,313, entitled "Offset Prosthetic Stem Extension,"

and granted the Motion for Summary Judgment of Noninfringement filed by Howmedica.

*Zimmer Inc. v. Howmedica Osteonics Corp*., 258 F.Supp.2d 874 (N.D. Ind. 2003).  On

May 26, 2004, the United States Court of Appeals for the Federal Circuit reversed and

remanded the case to this Court for further proceedings in accordance with its opinion.[1]

This Court entered a final *Markman* claim construction order on October 12, 2005.  In

that order, this Court denied the parties' motions for summary judgment as premature and

_____

[1]The Federal Circuit construed certain claim terms but declined to construe other
claim terms which may have been in dispute at the time of summary judgment.
Additionally, the Federal Circuit declined to determine whether the claims of the '313
patent are infringed by Howmedica's Duracon Total Stabilizer Revision System ("the
Duracon system") and the Scorpio Single Axis Total Knee System ("the Scorpio
system").  Instead, the Federal Circuit held that there existed genuine issues of material
fact sufficient to preclude a grant of summary judgment of noninfringement.

granted the parties leave to file new motions for summary judgment no later than January 3, 2006.[2]  After this Court issued its final *Markman* order, the parties filed cross motions for summary judgment, claiming that this Court's comprehensive claim construction ruling definitively shows that Howmedica's product infringe or do not infringe on the '313 patent.  Additionally, Howmedica filed a motion arguing that the '313 patent is obvious and thus invalid as a matter of law, and Zimmer filed a motion for summary judgment that its infringement claims are not limited by the doctrine of equitable estoppel.

### III.  Patents at Issue

**A.  The '313 Patent and Claim Construction**

Zimmer is the assignee of U.S. Patent No. 5,290,313 ("the '313 patent).  The '313 patent was filed by Mark A. Heldreth ("Heldreth") with the United States Patent and Trademark Office ("USPTO") on November 23, 1992, and the patent issued on March 1, 1994.  The '313 patent is directed to a modular system for surgically-implanted prosthetic joints and covers an offset prosthetic stem extension.  The '313 patent describes a modular implant system that replaces human joints and bones and was described primarily, though not exclusively, for use with prosthetic knee joints.

---

[2]The motions that were denied as premature include Howmedica's Renewed Motion for Summary Judgment of Invalidity of Claims 1-4, 6, 8, and 13-17 and Noninfringement of Claims 5, 7, and 9-12 of the '313 patent and Zimmer's Motion for Partial Summary Judgment on Howmedica's Defense and Counterclaim that the Greenwald Patent Anticipates or Renders Obvious the Asserted Claims of the '313 patent.

The '313 patent is comprised of a modular implant system wherein the base portion (10) and a stem extension (1) are joined together and inserted into a bone. The base portion is comprised of a base mounting means (12), and the stem extension is comprised of a stem mounting portion (2) and an elongated stem portion (3). These are joined by the connection portion (4). '313 patent, col. 2, ll. 50 - col. 3, ll. 9. This base portion is then attached to the stem extension by mounting the base mounting portion on the stem mounting portion. The extending tapered pin (33) of the stem mounting portion mates with the corresponding tapered recess (43) of the base mounting portion in a "Morse taper." The axis of the Morse taper (A) is offset from the axis of the elongated stem portion (B) by offset (O). The substantially parallel, central longitudinal, offset axis of the '313 patent allows the elongated stem portion to be inserted into the intermedullary canal of the tibia, while allowing the base portion to remain centered relative to the resected bone surface. '313 patent, fig. 9, col. 3, ll. 9-44. During surgery, the '313 patent can be rotated around its attachment point to the base portion, allowing it to be moved relative to the stem extension and thus allowing the surgeon to achieve maximum coverage of the resected surface. However, once the desired position is selected, the stem extension is fixed with respect to the base portion. A figure of the '313 patent is reproduced below:



The '313 patent contains seventeen (17) claims.  Claim 1 is an independent claim, and claims 2 through 17 are dependent upon claim 1.  Zimmer argues that Howmedica's accused products contain every limit of claim 1 of the '313 patent, thus infringing upon the '313 patent.  Howmedica asserts that claims 1-4, 6, 8, and 13-17 of the '313 patent are invalid under 35 U.S.C. § 102(b) and/or § 103 in view of U.S. Patent No. 4,106,128 to Greenwald, *et al*. ("the Greenwald patent").

Claim 1 claims:

A modular prosthesis comprising a prosthetic base portion having a surface for positioning adjacent to a corresponding bone, the base portion having a base mounting means thereon, and a stem extension for insertion into a cavity in a bone, the stem extension having a stem mounting means for mounting the stem extension to the base mounting means, and the stem extension further having an elongated stem portion connected to the stem

5

mounting means by a connection portion, and wherein the stem mounting
means has a first central longitudinal axis and the elongated stem portion
has a second central longitudinal axis substantially parallel to the first axis,
but which is spaced apart therefrom to provide an offset there-between.

'313 patent, col. 5, ll. 17-30.

The Federal Circuit held that there is no radial adjustment requirement in claim 1.

*Zimmer, Inc. v. Howmedica Osteonics Corp.*, 111 Fed.Appx. 593, 600 (Fed. Cir. 2004).

The Federal Circuit construed the terms "modular prosthesis system" and "stem

extension" to mean a standardized prosthesis system which encompassed both one-piece

and multiple-piece stem extensions.[3]  *Id.* at 599-600.  On remand, this Court accepted

Zimmer's argument that the Federal Circuit only partially construed the term "stem

extension."  This Court further construed the term "stem extension" as requiring "a

standardized prosthesis system including a prosthetic base portion . . . and a stem

extension, that are located on the same side of a joint."  *Zimmer Technology, Inc. v.*

*Howmedica Osteonics Corp.*, 397 F.Supp.2d 974, 984-85 (N.D. Ind. 2005).

"Stem mounting means" is a means plus function limitation such that the limitation

covers the embodiments disclosed in the specification that perform this function and their

equivalents."  *Zimmer,* 111 Fed.Appx. at 600.  The Federal Circuit held that the claimed

function is "mounting" and stated that the disclosed structure for performing this function

---

[3]The Court reasoned that if "'modular' meant 'one piece,' claim 1 would exclude
the prosthesis system of the preferred embodiments disclosed in the specification because
the prosthesis systems shown in the figures include two pieces–the stem extension and the
base portion."  *Zimmer,* 111 Fed.Appx. at 599.

is a Morse taper.[4]   On remand, this Court construed the term "mounting" as *"a Morse taper or equivalent structures capable of performing the claimed function of mounting the stem extension to the base." *Zimmer*, 397 F.Supp.2d at 987.

Claim 2 requires that the stem mounting means be radially adjustable in cooperation with the base mounting means to permit the second axis of the stem to be oriented in a plurality of radial orientations relative to the first axis.

Claim 3 is dependent upon claim 2 and claims: "[t]he system of claim 2 wherein the stem extension is releasably fixed to the base portion in the selected orientation." '313 patent, col. 5, ll. 36-38.  The Federal Circuit construed the term "releasably fixed to the base portion" as requiring that the connection between the base portion and stem extension "be releasable after the surgeon has selected the desired position for the stem extension axis, which occurs during surgery." *Zimmer*, 111 Fed.Appx. at 602.  On remand, this Court noted that, in this context, mounting or fixing was previously construed in claim 1 as "putting in position for use."  To effectuate consistency between terms, this Court construed "releasably fixed" as "releasably fixed to the base portion in the selected orientation."

Claim 4 requires that the connecting portion include a lower transition surface that

_____

[4]The Federal Circuit concluded that there was "sufficient evidence to raise a genuine issue of material fact as to whether the Morse taper and threaded connections are equivalent structures for the purpose of literal infringement of claim 1 under section 112, paragraph 6." *Zimmer*, 111 Fed.Appx. at 601.

crosses the first axis.

Claim 6 requires that this lower transition surface cross the first axis at an angle between 5 and 90 degrees.

Claim 8 claims: "[t]he system of claim 1 wherein the base mounting means includes a recess therein, and wherein the stem mounting means includes an extending pin for mating with the recess." '313 patent, col. 6, ll. 1-4.  In construing the "stem mounting means" of claim 1, the Federal Circuit stated that the disclosed structure for performing the mounting function is the Morse taper.  The specification states that a Morse taper includes an extending pin and a recess.  '313 patent, col. 3, ll. 45-50.  The base mounting means must include a recess therein, and the stem mounting means must include an extending pin for mating with the recess.  '313 patent, col. 3, ll. 45-48.  This Court construed "extending pin" as the "male component of a Morse taper" and "recess" as the "female component of a Morse taper*."   Zimmer*, 397 F.Supp.2d at 989.

Claim 13 requires that the system be comprised of a plurality of base and stem extensions, each of varying sizes, but designed so that any base could be attached to any stem.

Claim 14 requires that the stem extensions be sized to provide a plurality of offsets by varying the distance between the first and second axes.

Claim 17 claims: "[t]he system of claim 1 wherein the stem mounting means is selectively positionable in a plurality of orientations with respect to the base mounting

means so that the second axis can be selectively oriented in a plurality of positions with respect to the first axis and with respect to the base portion."[5]  '313 patent, col. 6, ll. 43-48.  This Court construed "selectively positionable" as requiring "that the stem be capable of being positioned or arranged in any desired orientation."  *Zimmer*, 397 F.Supp.2d at 990.

## B.  The '920 Patent

The application for U.S. Patent No. 5,782,920 ("the '920 patent") was filed with the USPTO on November 14, 1996.  The '920 patent issued on July 21, 1998, after the '313 patent issued.  Howmedica manufactures the Duracon Total Stabilizer ("Duracon") and the Scorpio TS ("Scorpio") as a licensed user the '920 patent.  The Duracon and Scorpio products include "orthopedic prosthesis components for use in revision knee surgery."  Howmedica's Memorandum in Support of its January 24, 2006 Motion for Summary Judgment at 7.

The '920 patent describes a system that includes a base portion/tray element (12) that is joined to an elongated stem portion (14).  Before assembly, the adapter element (16) is separate from the stem portion, and it is attached to the elongated stem portion by a threaded connection.  The base portion (12) is then attached to the connection portion by a second threaded connection rather than by a Morse taper.  It is directed to:

---

[5]Claim 17 requires that the user be able to select a position of the stem mounting means in a plurality of orientations relative to the base mounting means so that the second longitudinal axis may be oriented in a plurality of positions with respect to the first axis and the base portion.  '313 patent, col. 6, ll. 43-48.

a joint prosthesis component system allows an inferior component of a prosthesis system to be offset from a superior component of the system. In one embodiment the joint prosthesis component system comprises a tibial tray having an offset tibial stem. An adapter element connects between the tibial tray and tibial stem to provide the desired degree of offset and the orientation of the offset. The adapter element is constructed such that a longitudinal axis extending through a first end thereof is offset from a longitudinal axis extending through a second end thereof.

'920 patent Abstract.  A figure of the '920 patent is reproduced below:



FIG. 2

### C. Prior Art

#### 1. The Greenwald Patent

The USPTO issued U.S. Patent No. 4,106,128 ("the Greenwald patent"), entitled

"Endoprosthetic Bone Joint," to Seth A. Greenwald, *et al*. on August 15, 1978.  The

Greenwald patent was designed primarily to cover "prosthetic joints of the type used to

replace dysfunctional, non-weight bearing joints, such as the knuckle, wrist, elbow or

shoulder."  Greenwald Patent Abstract.  The preferred embodiment comprises a radial

component connected by a concavo-convex socket component to a metacarpal

component.  *Id*.  The radial component (10) includes an intramedullary stem (11)

terminating in a radial cup (13).  The radial cup (13) has a plurality of inwardly extending

pins.  Figures from the Greenwald patent are reproduced below:



FIG. 4

In the Greenwald patent:

> The concavo-convex socket component is retained in the cup by the articulation of the pins with a plurality of flats which communicate with slots which terminate in apertures. The concavo-convex component includes an opening extending inwardly from one end thereof which defines two communicating bearing surfaces, with the innermost surface being spherical and the outer surface being frusto-conical and having an elliptical cross-section.

Greenwald Patent Abstract. The joint is comprised of a metacarpal component (30), which includes a ball (31), a neck area, and an intramedullary stem (34). The socket (20) surrounds the ball (31) of the metacarpal component and mates with the inside cup portion of the radial component. *Id.* at col. 4, ll. 45-47; col. 5, ll. 20-28. Greenwald teaches that the lack of metal-to-metal contact in this joint is "beneficial to the friction and wear characteristics of the device." *Id.* at col. 3, ll. 15-20.

### 2. The Fabian Patent

Dennis F. Fabian, *et al.*, filed the application for U.S. Patent No. 4,936,853 ("the Fabian patent") on January 11, 1989. The Fabian patent issued on June 26, 1990, and the current assignee is Kirschner Medical Corporation. Fabian Patent Abstract. The Fabian patent:

> relates to an implantable knee joint prosthesis which is designed to replace the engaging surfaces of the femur and tibia of a dysfunctional human knee joint. In its most general form, the invention comprises an implantable knee joint prosthesis having a tibial stem portion, a tibial tray portion, an interchangeable modular articulating surface member which is removably attached to the tibial tray portion, and a femoral portion adapted to cooperatively bear upon the articulating surface. The invention also features a dual locking mechanism which attaches the articulating surface to the

13

tibial tray portion by means of a locking lip and flange arrangement together with a locking screw which fits into the tibial stem portion.

Fabian Patent Abstract.

The Fabian patent is directed to a modular knee prosthesis with modular interchangeable articulating surfaces.  It includes a base portion (24) having a base mounting means (22), a stem extension (10) for insertion into a cavity of a bone,  having with a Morse taper stem mounting means (12) for mounting the stem extension (10) to the base mounting means (22), and the stem extension (10) having an elongated stem portion. Fabian Patent at col. 2, ll. 2-9.  Figure 4 of the Fabian patent is reproduced below:



Zimmer identified the Fabian patent to the USPTO, it was considered by the patent examiner, and the '313 patent was allowed over Fabian.  '313 Prosecution History at HM00057-58.  Howmedica admits that the Fabian patent lacks a longitudinally offset stem extension, which is a claimed element from the '313 patent.  Docket No. 218-1 at

14

13.

### 3. The '305 Patent

Eckart Engelbrecht, *et al.*, filed the application for U.S. Patent No. 4,538,305 ("the

'305 patent") on July 15, 1982.  The '305 patent issued on September 3, 1985.  '305

Patent Abstract.  The '305 patent describes:

> [a] prosthesis for the knee joint has a tibial component and a femoral
> component . . . The tibial component includes a shaft which carries a
> platform and is received in the cavity of the tibia so as to position the tibial
> component. The platform supports a bearing element which engages the
> femoral component and, in addition, a projection is mounted on the
> platform and extends towards the femoral component. The femoral
> component includes a shaft which carries a hinge and is received in the
> cavity of the femur to position the femoral component. The hinge, which
> defines a pivot axis for bending of the knee, comprises a hinge pin having a
> recess which faces the tibial component. The projection is slidably received
> in the recess and defines a rotational axis about which limited rotation of
> the tibial component relative to the femoral component may take place. In
> addition, the projection maintains the hinge pin in requisite position. The
> prosthesis is economical and may be constructed in a simple manner,
> without any screw connections, from elements which are readily assembled.

'305 Patent Abstract.  Figures from the '305 patent are reproduced below:



FIG. 1     FIG. 2A     FIG. 2

## 4.  The Loda Patent

French Patent No. FR 2,669,214 ("the Loda patent") was issued to Loda Antonio

Guillermo.  The Loda patent describes an adjustable wrist prosthesis wherein a total wrist

prosthesis is implanted in the bones of the radius and carpals of the hand and forearm.

Loda Patent Abstract.  The Loda patent describes:

> An adjustable total wrist prosthesis, of a type which includes a first shaft
> fixed to the radius by an adequate procedure, and at least one second shaft
> fixed to one of the metacarpals, said first shaft and said at least one second
> shaft being connected to each other by a joint, characterized in that said
> joint consists of: a guide (7) and a slide (9), said guide (7) being mounted
> on a means of support and axial adjustment (4, 5, 6; 4', 5', 6', 13, 14, 15,

16

17), which is eccentric with regard to the axis of said first shaft (1), said means of support and adjustment being associated with a base (3) placed on the free end of said first shaft, and said slide (9) being mounted to move freely within said guide (7) and holding at least one second shaft (10) fixed on its distal part.

Total wrist prosthesis according to claim 1, characterized in that said means of support includes a threaded pin (6) which screws into a female thread (5) formed in a cylindrical body (4) fixed on said base.

Loda Patent Abstract.  Figure 4 from the Loda patent is reproduced below:



FIG. 4

## II.  STANDARDS OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact, the trial court has properly construed the claims, and the moving party is entitled to judgment as a matter of law.  *Lockwood v. American Airlines Inc*., 107 F.3d 1565, 1576 (Fed. Cir. 1997).  *See also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d 405, 410

(7th Cir. 1988).  Therefore, if a party fails to establish the existence of an essential

element on which the party bears the burden of proof at trial, summary judgment is

proper.  In this situation, there can be "'no genuine issue of any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

### III.  DISCUSSION

**A.  Preliminary Issues**

Before this Court addresses the heart of the pending summary judgment issues,

there are several issues that can be dealt with without any extended discussion.  On

January 3, 2006, Zimmer filed its Motion for Partial Summary Judgment on Howmedica's

Invalidity Defense and Counterclaim and Motion for Summary Judgment on

Howmedica's Estoppel Defense (Docket No. 183).  Among the issues raised in that

motion, Zimmer asserted that it is entitled to summary judgment because: (1) the

Greenwald patent does not anticipate or render obvious any asserted claim of the '313

patent; (2) the Greenwald patent and the '305 patent together do not render obvious claim

16 of the '313 patent; (3) No asserted claim of the '313 patent is invalid for failure to

comply with 35 U.S.C. § 112; and (4) No asserted claim of the '313 patent is invalid for

failure to comply with 35 U.S.C. §§ 102(c), 102(d), 102(e), 102(f), and 102(g).  Instead of

offering substantive responses to Zimmer's summary judgment arguments on the

invalidity issues outlined above, Howmedica merely states that it is no longer asserting

those invalidity issues and so they should be denied as moot.

There has been an abundance of unnecessary piling on in this case.  In this context, there are a number of issues that are no longer asserted or seriously disputed.  In *CIVIX-DDI, LLC v. Cellco P'ship*, 387 F.Supp.2d 869, 881 (N.D. Ill. 2005), the court held that it is improper for a court to grant summary judgment on an issue that a party is no longer asserting because, to do so, would result in an improper advisory opinion.  As early as Howmedica's December 28, 2005 supplemental interrogatory responses, Zimmer was on notice that Howmedica is no longer asserting the above-mentioned invalidity arguments.  Summary judgment on these issues is inappropriate because such would merely be an academic exercise resulting in an advisory opinion; the appropriate response is to deny these issues as moot.  The Court finds the following issues to be moot: (1) the Greenwald patent does not anticipate or render obvious any asserted claim of the '313 patent; (2) the Greenwald patent and the '305 patent together do not render obvious claim 16 of the '313 patent; (3)  No asserted claim of the '313 patent is invalid for failure to comply with 35 U.S.C. §112; (4) No asserted claim of the '313 patent is invalid for failure to comply with 35 U.S.C. §§ 102(c), 102(d), 102(e), 102(f), and 102(g).[6]

---

[6]At the August 17, 2006 Oral Argument hearing, Howmedica argued that the 1978 H.S.S. implant prior art is prior inventorship under 35 U.S.C. §§ 102(f) and 102(g).  This Court, however denied Howmedica's Motion for Leave to File a Dispositive Motion for Summary Judgment Based on Newly Discovered Evidence.  Since the 1978 prior art is not a part of the record and was not raised in Howmedica's response to Zimmer's motion for summary judgment, it does not provide an adequate basis on which to preclude summary judgment.

## B.  Patent Invalidity

Zimmer maintains that it is entitled to partial summary judgment on Howmedica's invalidity defense that the Greenwald patent and the Fabian patent do not render obvious claims 13 and 14 of the '313 patent.  Howmedica asserts that the Court should grant summary judgment that claims 1-4, 6, 8, 9, 13, 14, 16, and 17 of the '313 patent are invalid in view of the Fabian and Greenwald prior art references.[7]  Docket No. 217 at 1.

Section 282 of Title 35 of the United States Code provides that a patent shall be presumed valid.  *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) (holding that the USPTO is presumed to have performed its job properly when it issues a patent).  Each claim of a patent, whether it is independent, dependent, or multiple dependent form, shall be presumed valid independently of the validity of other claims.[8]  35 U.S.C. § 282.  Because a patent retains its statutory presumption of validity under 35 U.S.C. § 282, the movant must establish invalidity by clear and convincing evidence.  *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003); *McGinley v. Franklin Sports Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001).  This

_____

[7]Howmedica argues that except for one claim element, every element of the claimed inventions of the '313 patent is disclosed in the prior art Fabian patent.  Howmedica asserts that the claim element missing from the Fabian patent – two central longitudinally offset stem axes – is present in the Greenwald patent.  Docket No. 217-2 at 11.

[8]Dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.  35 U.S.C. § 282.

21

presumption is never weakened. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F.Supp.2d 444, 449 (D.Del. 2004) (citations omitted). The burden of producing evidence to rebut invalidity may shift to the patentee only if the party asserting invalidity has produced a legally sufficient *prima facie* case of invalidity. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 291 (Fed. Cir. 1985). If a *prima facie* case of invalidity has been met, all of the evidence demonstrating and rebutting invalidity together must be examined to determine whether there is clear and convincing evidence of invalidity. *Id.* at 291-92.

Section 103(a) of Title 35 of the United States Code states: "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). *See also Alza Corp. v. Mylan Labs.*, No. 06-1019, 2006 WL 2556356, *4 (Fed. Cir. Sept. 6, 2006) ("a claimed invention is unpatentable if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art") (internal quotation marks omitted). In assessing the differences between the subject matter sought to be patented and the prior art, the court must consider the claimed invention as a whole. Because inventions are typically new combinations of existing principles or features, 35 U.S.C. § 103(a) prevents a court from evaluating the

invention part by part.[9]  *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004).

The obviousness determination is ultimately a question of law based on underlying findings of fact.[10]  *Kahn*, 441 F.3d at 985 (*citing In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999).  The underlying factual inquiries include: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the prior art; and (4) any objective evidence of non-obviousness, including long-felt but unsolved needs, commercial success, the failure of others, or evidence of copying.[11]  *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).  *See also Rogers v. Desa Intern., Inc.*, 2006 WL 1965660, *3 (Fed. Cir. July 13, 2006); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004).  The existence of each element of a claim in the prior art does not, by itself, demonstrate obviousness.  Rather,

---

[9]In *Ruiz*, the Court stated, "[t]his form of hindsight reasoning, using the invention as a roadmap to find its prior art components, would discount the value of combining various existing features or principles in a new way to achieve a new result - often the very definition of invention."  357 F.3d at 1275.

[10]"When there are genuine disputes about these underlying facts or about whether they add up to a finding of obviousness, the issue is properly resolved by a jury."  *Konvin Assoc. v. Extech/Exterior Techs.*, No. 04-2544, 2006 WL 2460589, *6 (N.D. Ill. Aug. 21, 2006) (*citing R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1515 (Fed. Cir. 1984)).

[11][P]recedent clearly establishes that the district court must make Graham findings before invalidating a patent for obviousness."  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000); *see Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed. Cir. 1984) (hindsight and speculation found where a district court cited but did not apply the Graham factors); *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986).

there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success."[12]  *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999) (internal citations omitted).  A claim can be obvious "even where all of the claimed features are not found in specific prior art references, where 'there is a showing of a suggestion or motivation to modify the teachings of [the prior art] to the claimed invention.'" *Ormco Corp. v. Align Tech., Inc.*, No. 05-1426, 2006 WL 2493245, *6 (Fed. Cir. Aug. 30, 2006) (quoting *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000).  "What the prior art teaches, whether it teaches away from the claimed invention, and whether it motivates a combination of teaching from different references are questions of fact." *In re Fulton*, 391 F.3d 1195, 1199-1200 (Fed. Cir. 2004).

1.  Scope and Content of the Prior Art

The scope and content of the prior art "includes art that is reasonably pertinent to the particular problem with which the invention was involved." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664 (Fed. Cir. 2000) (internal quotation marks and citation omitted).  The

---

[12]When claim elements are present in more than one prior art reference, the court must still determine "whether a person of ordinary skill in the art, possessed with the understanding and knowledge reflected in the prior art, and motivated by the general problem facing the inventor, would have been led to make the combination recited in the claims."  *In re Kahn*, 441 F.3d 977, 988 (Fed Cir. 2003).

court should focus on the claims at issue in the suit, the art the USPTO applied to the claims, and the nature of the problem confronting the inventor.  *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986).  Here, there are two prior art references that must be considered: the Greenwald patent and the Fabian patent.

The Greenwald patent is directed to the mechanics of an artificial wrist joint.  The Greenwald patent was designed primarily to cover "prosthetic joints of the type used to replace dysfunctional, non-weight bearing joints, such as the knuckle, wrist, elbow or shoulder."  Greenwald Patent Abstract.  The Greenwald patent discloses an entire ball-and-socket joint with two stems and an articular surface.  The radial component of the Greenwald patent represents one side of the joint that meets in the wrist joint in a ball-and-socket joint with the metacarpal component on the other side of the joint.  The ball articulates and is free to rotate within the socket to mimic the mobility of a natural wrist joint.  Crowninshield Decl. ¶ 10.

The Fabian patent is directed to a modular knee prosthesis with modular tibial interchangeable articulating surfaces.  Fabian patent, col. 1, ll. 19-23.  It teaches that "the tibial stem portions may be of various lengths and in various configuration" and recognizes the need for a "custom fit for each patient and his or her particular therapeutic need."  Fabian Patent Abstract.

2.  Level of Ordinary Skill in the Prior Art

"The person of ordinary skill in the art is a legal construct - a hypothetical person

who is placed in the position of being aware of all of the relevant prior art." *The Boeing Co. v. U.S.*, 69 Fed.Cl. 397, 420 (Fed. Cl. 2006).  When considering the third *Graham* factor, the critical question is whether the claimed invention would have been obvious, at the time it was made, to one of ordinary skill in the art.  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986).  When examining the level of ordinary skill in the field of the invention, the Court looks at "factors such as educational level of the inventor, educational level of those who work in the industry which manufactures [the invention], and the sophistication of the technology involved." *Konvin Assoc. v. Extech/Exterior Techs*., No. 04-2544, 2006 WL 2460589, *6 (N.D. Ill. Aug. 21, 2006) (quoting *Ryko Mfg. Co. v. Nu-Star, Inc*., 950 F.2d 714, 718 (Fed. Cir. 1991)).

Howmedica stated, "in addition to the level of skill set forth in the expert report of Dr. Richard Laskin, the prior art patents cited by Howmedica plainly establish what inventions persons of ordinary skill would consider obvious."  Docket No. 218 at 35-36. Howmedica argues that a specific finding on the level of skill in the art is not required where the prior art itself reflects an appropriate level and a need for testimony is not shown.  Each party has discussed a "level of ordinary skill in the art" without defining the requisite level of skill and without explaining the bases for their conclusions.  Therefore, both Zimmer and Howmedica have failed to satisfy the burden to prove that there is no genuine issue of material fact as to who qualifies as a person of ordinary skill in the art

26

pertaining to the analysis of modular prosthetic implants.  Howmedica has failed to

establish even a *prima facie* case of obviousness that would shift the burden of going

forward with evidence to Zimmer.

3.  Motivation to Combine

There are also genuine issues of material fact as to whether one of ordinary skill in

the art would have been motivated to combine the teachings of the Fabian patent and the

Greenwald patent.  When undertaking an obviousness analysis, "the problem examined is

not the specific problem solved by the invention but the general problem that confronted

the inventor before the invention was made."  *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir.

2006).  *See Cross Med. Prods. Inc., v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293,

1323 (Fed Cir. 2005) ("One of ordinary skill in the art need not see the identical problem

addressed in the prior art reference to be motivated to apply its teachings.").  The

"motivation-suggestion-teaching" test asks not only what the references disclose, but also

whether a person of ordinary skill in the art, who possessed the understandings and

knowledge reflected in the prior art, and who was motivated by the general problem

facing the inventor, would have been led to make the combination recited in the claims.

*In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

A suggestion, teaching, or motivation to combine the relevant prior art teachings

may be found explicitly in the prior art or may be implicit from the prior art as a whole,

rather than expressly stated in the references.  "The test for an implicit showing is what

27

the combined teachings, knowledge of one of ordinary skill in the art, and the nature of

the problem to be solved as a whole would have suggested to those of ordinary skill in the

art." *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000). A motivation to combine or

modify the prior art to meet the claimed invention may also be negated by a reference that

"teaches away" from that combination or modification. *Medichem, S.A. v. Rolabo, S.L.*,

437 F.3d 1157, 1165 (Fed Cir. 2006). Finally, the "'presence or absence of a motivation

to combine reference in an obviousness determination is a pure question of fact,' as is the

presence or absence of a 'reasonable expectation of success' from making such a

combination." *Alza Corp. v. Mylan Labs*., No. 06-1019, 2006 WL 2556356, *5 (Fed. Cir.

Sept. 6, 2006) (internal quotations and citations omitted).

    Howmedica argues that the motivation to combine the prior art's references

existed in the nature of the problem to be solved. *See Ruiz v. A.B. Chance Co.*, 357 F.3d

1270, 1276 (Fed. Cir. 2004). Zimmer argues that neither the Fabian patent nor the

Greenwald patent address the same problem as the '313 patent, because the Fabian patent

addresses the lack of interchangeable modular tibial articular surfaces (Fabian patent, col.

1, ll. 19-23) and the Greenwald patent addresses the mechanics of an artificial wrist joint.

Crowninshield Decl., ¶ 13; Rand Decl. ¶ 19. Zimmer asserts that the Greenwald patent

addresses the unique problem of joint articulation in a wrist and that the Fabian patent

relates to implant fixation. As such, Zimmer argues that these two references teach away

from each other, removing any motivation or suggestion to combine them as a matter of

law.  Rand Decl., ¶¶ 18-25; Crowninshield Decl., ¶ 19.  Finally, Zimmer asserts that even

if the Fabian and Greenwald patents were combined, it would not result in the '313 patent

because the combination would resemble an implant similar to the Elloy patent.

While the prior art and patent at issue deal with orthopedic prostheses, each

invention addresses a very distinct and different problem.  Howmedica has not presented

any evidence beyond the assertion of its expert that there would have been a motivation to

combine, and Zimmer denies that one of ordinary skill in the art would have selected

these components for combination in the manner claimed.  The expert reports before this

Court contain improper hindsight-driven analysis.[13]  Therefore, the Court finds that there

are a material questions of fact as to: (1) whether the Greenwald and Fabian patents teach

away from their combination and (2) whether there exists motivation to combine the

resources to obtain the '313 patent.  *See Alza Corp. v. Mylan Labs*., No. 06-1019, 2006

WL 2556356, *5 (Fed. Cir. Sept. 6, 2006) (internal quotations and citations omitted)

("'presence or absence of a motivation to combine reference in an obviousness

determination is a pure question of fact,' as is the presence or absence of a 'reasonable

expectation of success' from making such a combination.").

4. Differences Between the Prior Art and Claims at Issue

---

[13]The focus of this inquiry is "not the specific problem solved by the invention but
the general problem that confronted the inventor before the invention was made."  *In re
Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

When comparing the difference between the claims at issue and the prior art references, the court must view the claimed invention as a whole. *Bausch & Lomb*, 796 F.2d at 449; *see also Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1570 (Fed. Cir. 1996) ("[T]he determination of obviousness, *vel non*, requires that all the evidence be considered together.").

a. Claim 1

Claim 1 claims:

A modular prosthesis comprising a prosthetic base portion having a surface for positioning adjacent to a corresponding bone, the base portion having a base mounting means thereon, and a stem extension for insertion into a cavity in a bone, the stem extension having a stem mounting means for mounting the stem extension to the base mounting means, and the stem extension further having an elongated stem portion connected to the stem mounting means by a connection portion, and wherein *the stem mounting means has a first central longitudinal axis and the elongated stem portion has a second central longitudinal axis substantially parallel to the first axis, but which is spaced apart therefrom to provide an offset there-between.*

'313 patent, col. 5, ll. 17-30 (emphasis added).  By Howmedica's own admission, the Fabian patent does not disclose two longitudinally offset axes in the stem extension.  In other words, the Fabian patent does not disclose a longitudinally offset stem extension for insertion into a bone.  Docket No. 218 at 1, 12-13.  Howmedica argues that this "missing element is clearly taught in Greenwald."  Docket No. 278-1 at 4.  Howmedica argues that "one of ordinary skill in the art would have known . . . to modify the shape of the Fabian straight stem extension to provide the offset of Greenwald in order to solve the well-

known need to accommodate the variable anatomy of patients' bone canals."  Docket No. 278-1 at 4-5.  However, as discussed above, there is a genuine issue of material fact as to whether the Greenwald patent asserts this missing element and whether there was motivation to combine the Greenwald patent and Fabian patent to reach the invention of the '313 patent.  Howmedica's conclusory statements are insufficient to meet is burden of proving invalidity by clear and convincing evidence.

b.  Claims 2, 3, and 17

Claim 2 requires that the stem mounting means be radially adjustable in cooperation with the base mounting means to permit the second axis of the stem to be oriented in a plurality of radial orientations relative to the first axis.  Claim 3 is dependent upon claim 2 and claims: "[t]he system of claim 2 wherein the stem extension is releasably fixed to the base portion in the selected orientation."  '313 patent, col. 5, ll. 36-38.  Claim 17 is dependent upon claim 1 and claims: "[t]he system of claim 1 wherein the stem mounting means is selectively positionable in a plurality of orientations with respect to the base mounting means so that the second axis can be selectively oriented in a plurality of positions with respect to the first axis and with respect to the base portion."  '313 patent, col. 6, ll. 43-48.  This Court construed "selectively positionable" as requiring "that the stem be capable of being positioned or arranged in any desired orientation."

It is clear that the Fabian patent alone does not disclose a stem extension with two parallel offset axes.  As such, there is not a "second axis [that] can be selectively oriented

31

in a plurality of positions with respect to the first axis." *See* '313 patent Claim 17.  There

is a genuine issue of material fact as to whether there is motivation to combine the

Greenwald and Fabian patents to meet this requirement.

c.  Claims 4 and 6

Claim 4 requires that the connecting portion includes a lower transition surface

that crosses the first axis.  Claim 6 requires that this lower transition surface cross the first

axis at an angle between 5 and 90 degrees.  Zimmer argues that the Greenwald patent

does not disclose the claimed stem extension having parallel offset axes in a bone cavity.

Howmedica asserts that the connecting portion of the Greenwald patent has a "lower

transition surface" that crosses the first axis, and which also crosses the base mounting

means longitudinal axis at an angle between 5 and 90 degrees.  Docket No. 218-2 at 28.

According to Howmedica, "[o]nce the Fabian stem extension is modified to include the

offset taught in Greenwald, that modified offset stem extension unquestionably is inserted

entirely into the bone, and has the claimed "lower transition surface" of claims 4 and 6.

Docket No. 278-1 at 26.  However, as discussed above, there is a genuine issue of

material fact as to whether there was motivation to combine the Greenwald patent and

Fabian patent to reach the invention of the '313 patent

d.  Claims 8 and 9

Claim 8 claims: "[t]he system of claim 1 wherein the base mounting means

includes a recess therein, and wherein the stem mounting means includes an extending pin for mating with the recess." '313 patent, col. 6, ll. 1-4.  Claim 9 claims the system of claim 8 wherein the recess and the pin each include mating tapered surfaces to provide a secure mating interlock therebetween.  Both claims 8 and 9 ultimately depend from claim 1.  As mentioned above, there exists a genuine issue of material fact as to the obviousness of claim 1.  As such, this Court cannot grant summary judgment of invalidity of Claims 8 and 9.

e.  Claims 13 and 14

Claim 13 requires that the system be comprised of a plurality of base and stem extensions, each of varying sizes, but designed so that any base could be attached to any stem.  Claim 14 requires that the stem extensions be sized to provide a plurality of offsets by varying the distance between the first and second axes.  Howmedica argues that these additional limitations are found in the prior art Fabian and Greenwald patents.  As to claim 13, Howmedica asserts that the Fabian patent shows a selection of differently sized stem extensions for attachment to the base portion and that its specification states that the different sized component allow for a tailored implant.  Regarding claim 14, Howmedica argues that the Greenwald patent provides a selection of different sized offset stems with varying degrees of offset.

Neither the Fabian nor the Greenwald patent addresses the same problem as the '313 patent – maintaining a desirable base portion coverage and implant fixation when

33

faced with an off-center intramedullary canal. '313 patent, col. 2, ll. 7-18. The Court

finds that there is a material question of fact as to whether the Greenwald patent in view

of the Fabian patent discloses the plurality of base portions of varying sizes required by

claims 13 and 14. Even accepting that the Greenwald patent provides a selection of

different sized offset stems with varying degrees of offset and the Fabian patent teaches a

selection of differently sized stem extensions for attachment to the base portion,

Howmedica's proof falls short of showing the sort of teaching, suggestion, or incentive to

combine features of the Fabian and Greenwald patents required to show obviousness.

"This showing must be clear and particular," the Federal Circuit has stated, and beyond

"broad conclusory statements about the teaching of multiple references." *Brown &*

*Williamson Tobacco,* 229 F.3d at 1125; *see also In re Dembiczak,* 175 F.3d 994, 1000

(Fed.Cir.1999).

5. Secondary Considerations of Nonobviousness

    Although there are questions of fact that remain on the obviousness issue, the

Court must also address the secondary considerations of nonobviousness. Secondary

considerations of nonobviousness, if present, must be considered by the court before a

conclusion on obviousness may be reached.[14] *Ashland Oil, Inc. v. Delta Resins &*

---

[14]The Federal Circuit has stated, "[E]vidence of secondary considerations may
often be the most probative and cogent evidence in the record. It may often establish that
an invention appearing to have been obvious in light of the prior art was not." *Stratoflex,
Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

*Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985); *Simmons Fastener Corp. v. Ill. Tool Works, Inc.,* 739 F.2d 1573, 1575 (Fed. Cir. 1984).  The Federal Circuit has recognized the importance of guarding against hindsight, stating that secondary considerations serve "to guard against slipping into use of hindsight and to resist the temptation to read into the prior art the teachings of the invention in issue." *Alza.* 2006 WL 2556356 at *6 (quoting *Graham*, 383 U.S. at 36).  Evidence of secondary considerations of nonobviousness "may be sufficient to overcome a *prima facie* case of obviousness." *In re Beattie*, 974 F.2d 1209, 1313 (Fed. Cir. 1992).

First, Zimmer points to commercial success as evidence of secondary considerations.  It states that the sales of Zimmer products incorporating an offset stem generated over one hundred million ($100,000,000) dollars in revenue.  Dudney Decl., Exhibit 1 at 9.  Zimmer further argues that the offset stem in Zimmer's '313 patent is a major selling point to surgeons.  Daniel Decl. ¶ 4-5.  Finally, Zimmer contends that Howmedica employees considered the offset "important" for commercial success.  Dudney Decl., Exhibit 2 at 2.

Second, Zimmer pointed to long felt need and failure of others as evidence of secondary considerations.  Zimmer argues that the claimed invention is a modular solution to the problem of aligning the base portion when there exists an off-center intramedullary canal.  Crowninshield Decl. ¶¶ 12-16.  Zimmer also states that Howmedica Osteonics considered copying the offset stem within a year of the '313 patent's issuance.

35

Curran Decl., Exhibit 10.  Finally, Zimmer asserts that Greenwald – a bioengineer – failed to come up with the '313 invention; therefore, a long felt need that others had failed to satisfy existed at the time of the '313 invention.

Third, Zimmer states that licensing is evidence of secondary considerations. Specifically, Zimmer asserts that it has been approached for licenses (Curran Decl., Exhibits 11 and 12) and that Howmedica  licensed the '920 patent, which is directed to an offset stem extension.

Here, Howmedica has failed to establish a *prima facie* case of invalidity of the '313 patent based on obviousness by clear and convincing evidence.  Even so, there are questions of fact on the weight to be given to each of these secondary considerations of nonobviousness.  For these reasons, the Court is unable to conclude as a matter of law that claims 1-4, 6, 8, 9, 13, 14, 16, and 17 of the '313 patent are invalid for obviousness. Accordingly, Howmedica's Motion for Summary Judgment of Invalidity of those claims is DENIED.  Zimmer's Motion for Summary Judgment that the Greenwald and Fabian patents together do not render obvious claims 13 and 14 of the '313 patent is also DENIED.

## C.  Infringement/Noninfringement

Howmedica has moved for summary judgment of non-infringement, arguing that no jury could reasonably find that Howmedica's products infringe on the asserted claims

of the '313 patent, either literally or under the doctrine of equivalents.  Howmedica

asserts that the accused products do not perform the claimed function of "mounting a

stem extension to a base mounting means" as required by independent claim 1 of the '313

patent and all dependent claims.  Docket No. 216-1 at 1.  Howmedica relies on the

specifications and file history of the '313 patent.  On January 24, 2006, Howmedica filed

a motion for summary judgment of invalidity of claims 1-4, 6, 8, 9, 13, 14, 16, and 17 of

the '313 patent in view of the Fabian and Greenwald prior art references, and

noninfringement of unasserted claims 5, 7, 10-12, and 15 of the '313 patent.[15]  Docket

No. 217 at 1.

Patent infringement occurs when a person "without authority makes, uses, offers to

sell, or sells any patent invention, within the United States or imports into the United

States any patented invention, during the term of the patent." 35 U.S.C. § 271(a).  *See*

*Hoechst-Roussel Pharm., Inc. v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997).  A finding

of patent infringement requires a two-step analytical approach.  First, the claims of the

patent must be construed as a matter of law to determine their proper scope and meaning.

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  *See also*

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004);

---

[15]In that motion, Howmedica asserted it was entitled to summary judgment of
noninfringement of unasserted claims 5, 7, 10-12, and 15 of the '313 patent but never
addressed this issue in its briefs and failed to support their arguments in any way.
Therefore, summary judgment on this issue in Docket No. 217 should be denied.  See
FED. R. CIV. P. 56(e)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1176 (Fed. Cir. 2002).  *See also* 35 U.S.C. § 271(a).  Second, the patentee must demonstrate by a preponderance of the evidence that every claim limitation the claim asserted to be infringed is present in the accused device, either literally or under the doctrine of equivalents.  *Liquid Dynamics*, 355 F.3d at 1367.  *See also Pause Tech. LLC v. TiVo, Inc.*, 419 F.3d 1326, 1329 (Fed. Cir. 2005) (asserting that after claim construction is complete, the next step in an infringement analysis is for the court to compare the properly construed claims with the allegedly infringing devices); *Deering Precision Instruments, LLC v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003).  Whether the accused device meets each claim limitation is generally an issue of fact.  *Pause Tech.*, 419 F.3d at 1329.  A trial court cannot reach a conclusive finding of non-infringement if the record shows some evidence supporting a finding of non-infringement and some evidence to the contrary.  *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004).  The Court completed step one by construing the proper meaning and scope of the terms in its October 12, 2005 Order.  The Court must now proceed to step two.

**1.  Literal Infringement**

To establish literal infringement, the allegedly infringing products must contain every limitation set forth in the asserted patent claims.  *Konvin Assoc. v. Extech/Exterior Techs.*, No. 04-2544, 2006 WL 2460589, *10 (N.D. Ill. Aug. 21, 2006); *Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 2005) (*en banc*); *Kenall*

*Mfg. Co. v. Genlyte Thomas Group., LLC*, 439 F.Supp.2d 854, 865 (N.D. Ill. 2006).  For

Zimmer to establish literal infringement of a means-plus-function claim, it must show that

the accused product or device "performs the identical function specified in the claims."

*WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999).

Here, the claimed function is "mounting the stem extension to the base."  Oct. 12,

2005 Order at 26.  Howmedica argues that its Duracon and Scorpio products do not

literally infringe the '313 patent because they do not perform the claimed function of

"mounting the stem extension to the base mounting means."[16]  Docket No. 216-2 at 7.

Rather, Howmedica asserts that the accused products connect a "stem extension" to

another permanently attached stem.  Docket No. 216-1 at 8.  Howmedica argues that the

Duracon and Scorpio products are made with a tibial tray (or femoral component) that has

a separate permanent stem.  Docket No. 216-1 at 8.  According to Howmedica, the

Duracon and Scorpio products provide a separate permanent short stem  "to provide

enhanced fixation and rotational stability and allow surgeons the option of not utilizing a

longer stem extension when one is not needed."[17]  Docket No. 216-2 at 9.  Howmedica

_____

[16]At the March 16, 2006 oral argument hearing, Howmedica asserted "we don't do
what that [the '313 patent] claim requires.  We don't attach it to the base.  We attach it to
another stem and that other stem . . .That top portion can be used by itself.  It doesn't
have to use the lower stem.  There is a stem there already . . . so we're attaching one stem
to another which isn't what the claim is all about."  Transcript of 3-16-06 hearing, p. 23,
ll. 13-22.

[17]Howmedica argues that the tibial component can be used without an additional
longer stem by using a polyethylene plug that would be inserted into the threaded end of

further asserts that "[t]ibial trays which provide only a base portion sitting atop the bone, with a directly attached stem (like those claimed by the '313 patent), impart less rotational stability." Docket No. 216-2 at 9. Finally, Howmedica argues that although the permanent stem is connected to the base, "it is a separate component as far as it has a function to operate as a stem, to perform as a stem. It's not a connector which the patent requires." Transcript of 3-16-06 hearing, p. 24, ll. 2-4.

Howmedica admits that "stem mounting means for mounting the stem extension to the base mounting means" is a means-plus-function term under 35 U.S.C. § 112 and concedes that this Court construed "stem mounting means" in its October 12, 2005 order. However, Howmedica now asserts that this Court and the Federal Circuit "focused on the structure of the "stem mounting means," i.e., whether the connection itself is a Morse taper or its equivalent . . . [but not] whether the Accused Devices perform the claimed function, i.e., whether the Accused Devices even mount a stem extension to a base." Docket No. 216-2 at 5 (emphasis in original).

The question before this Court is whether, in the accused products, the stem extension is mounted and attached to the base portion. The '313 patent calls for a connection portion that is part of the stem extension component and which connects the elongated stem to the stem mounting means of the stem extension component. The

_____

the short permanent stem. Docket No. 216-2 at 9.

femoral components and tibial components are base portions, each of which contains a female threaded recess (the base mounting means) that connects with the male threaded pin of the stem extension (stem mounting means).[18]  Docket No. 21 at 14.  It is through this connection that the stem extension is mounted to the base mounting means. Howmedica's products include a permanent, threaded connection and inference fit to attach the base and stem extension.  Howmedica has argued that the accused products do not perform the "mounting" function because the permanent stem is a separate component.  This Court finds that there is a genuine issues of material fact as to whether the stem is a permanent stem that is a separate component from the base.  Accordingly, Howmedica's motion for summary judgment that the accused products do not literally infringe the '313 patent must be denied.

## 2.  Doctrine of Equivalents

Even where there is no literal infringement, a product or process may infringe "if there is 'equivalence' between the elements of the accused product or process and the claimed element of the patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.* 520 U.S. 17, 21 (1997).  Under the doctrine of equivalents, the product or process must still contain each limitation of the claim to infringe.  *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005).  *See also Aquatex Indus.,*

---

[18]Howmedica's products contain a female thread on the base plate and a male thread on the offset adapter element.  Docket No. 21 at 14.

*Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (holding that to

constitute infringement under the doctrine of equivalents, the accused product must

contain each limitation of the claim or its equivalent).[19]   However, infringement of a

means-plus-function limitation under the doctrine of equivalents requires that the accused

product or process "perform[s] substantially the same function, in substantially the same

way, to achieve substantially the same result, as the disclosed structure." *Kemco Sales,*

*Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).   And whether a means-

plus-function limitation is satisfied includes questions of function and of structure.

*Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379-80 (Fed. Cir. 2000).

Because each limitation contained in a patent claim is material to defining the

scope of the patented invention, a doctrine of equivalents analysis must be applied to

individual claim limitations, not to the invention as a whole. *Warner-Jenkinson Co. v.*

*Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).   An element is equivalent if the

differences between the element and the claim limitation are insubstantial to one of

ordinary skill in the art. *Warner-Jenkinson*, 520 U.S. 17, 40 (1997).   The analysis of

whether differences between the accused product and the claim limitation are

"insubstantial" is "whether the element in the accused device 'performs substantially the

---

[19]The doctrine of equivalents is related to but separate from the notion of
equivalency contained in 35 U.S.C. § 112, ¶ 6.  "Section 112, paragraph 6, plays no role
in determining whether an equivalent function is performed by the accused device under
the doctrine of equivalents." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931,
934 (Fed. Cir. 1987) (*en banc*).

same function in substantially the same way to obtain the same result' as the claim

limitation." *Aquatex*, 419 F.3d at 1382; quoting *Graver Tank & Mfg. Co. v. Linde Air

*Prods. Co.*, 339 U.S. 605, 608 (1950). *See also Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co.*, 543 U.S. 722, 733 (2002) (stating that the doctrine of equivalents "allows

the patentee to claim those insubstantial alterations that were not captured in the drafting

of the original patent claim but which could be created through trivial changes.").

Here, the Court must determine whether Howmedica's accused products perform

substantially the same function of mounting a stem extension to a base.  Howmedica

argues that the accused products do not infringe claims 1-17 of the '313 patent under the

doctrine of equivalents.  According to Howmedica, the "fact that the claims specifically

separately claim the 'base mounting means' and 'stem extension' indicates that the

patentee recognized these as separate, non-equivalent structures."  Docket No. 216-2 at

11.  Howmedica contends that if the scope of equivalents was read to cover the Duracon

and Scorpio products, it would entirely read out the claimed requirement that the stem

extension be mounted to the base mounting means.

In contrast, Zimmer asserts that "it is a substantially similar function to mount a

stem extension to a short extension member or "permanently attached stem" on the base

portion.  Zimmer's Memorandum in Opposition to Howmedica's Jan. 24, 2006 Motion at

14.   Zimmer argues that there "will always be some structure onto which a stem

extension is mounted, and it is an insubstantial difference if this extension member is

43

slightly longer or shorter.  Either way, the final assembled prosthesis includes a stem for insertion into a bone, and the result is the same no matter where any modularity occurs." Zimmer's Memorandum in Opposition to Howmedica's Jan. 24, 2006 Motion at 14.

In the '313 patent, claim 1 and all dependent claims require that a device performs the claimed function of "mounting the stem extension to the base mounting means."  The Federal Circuit previously ruled that there exists a genuine issue of material fact as to whether Howmedica utilizes an equivalent "stem mounting means" structure as that disclosed in the '313 patent.  A genuine issue of material fact exists as to whether the Morse tape and threaded connections are equivalent structures for performing the claimed function.  October 12, 2005 order at 12-13.  As such, Howmedica's motion for summary judgment that the accused products do not infringe the '313 patent under the doctrine of equivalents must be denied.

**D.  Equitable Estoppel**

Zimmer maintains that it is entitled to partial summary judgment that its infringement claims are not limited by the doctrine of equitable estoppel.  Docket No.183; Docket No. 184.  Equitable estoppel is a defense against infringement claims.  35 U.S.C. § 282.  It "may serve as an absolute bar to a patentee's claim of infringement."  *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*). Equitable estoppel prevents a party who has communicated that it will not enforce a patent claim from bringing a claim of infringement.  *Winbond*, 262 F.3d at 1074.

44

An equitable estoppel claim requires that: "(1) the patentee, through misleading conduct leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001); *see Vanderlande Indus. Nederland BV v. Int'l Trade Comm.*, 366 F.3d 1311, 1324 (Fed. Cir. 2004). Absent special circumstances, the party asserting equitable estoppel bears the burden of proving each of the three aforementioned elements by a preponderance of the evidence. *Aukerman*, 960 F.2d at 1046. Even if all three elements of equitable estoppel are established, the court must consider any other evidence or facts "respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Aukerman*, 960 F.2d at 1043.

The first element of equitable estoppel requires communication by the patentee that misleadingly suggests that the patent holder will not assert its rights under the patent. *Vanderlande*, 366 F.3d at 1324. Equitable estoppel will be a defense if the alleged infringer had knowledge of the patentee and its patent and reasonably infers that the "patentee acquiesced to the allegedly infringing activity for some time." *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001). The patentee's conduct must have supported an inference that the patentee did not intend to bring an

45

infringement claim against the alleged infringer of the patent. *Aukerman,* 960 F.3d at 1042; *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. CV-00-20905, 2006 WL 1867724, *3 (N.D. Cal. July 6, 2006). Misleading action, communication, or conduct includes specific statements, action, inaction, or silence[20] where there existed an obligation to speak. *Aukerman*, 960 F.3d at 1042. Unless the facts demonstrate misleading conduct by the patentee other than communication followed by a period of silence alone, the patentee must have "threatened immediate or vigorous enforcement of its patent right" for the communication to be misleading. *Meyers v. Asics*, 974 F.2d 1304, 1309 (Fed. Cir. 1992); *Meyers v. Brooks Shoe*, 912 F.2d 1459, 1464 (Fed. Cir. 2000).

Zimmer asserts that Howmedica cannot rely on silence alone to satisfy the requirements of equitable estoppel. Rather, Zimmer asserts that the period of silence must have been preceded by a threat of immediate and vigorous enforcement. Zimmer asserts that it did not threaten Howmedica with immediate or vigorous enforcement of its patent rights in its letters to Howmedica. Docket No. 184-1 at 23. Zimmer also contends that the length of the period of silence is irrelevant. Docket No. 184-1 at 24.

Howmedica asserts that it reasonably inferred that Zimmer did not intend to bring a patent infringement suit against Howmedica based on the period of silence between the

---

[20]Misleading action or communication by the patentee may be "silence, if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith." *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) (citations omitted).

August 2000 letter and the time this suit was filed in June 2002.  Further, Howmedica

argues that Zimmer's estoppel argument is based on a misstatement of Federal Circuit

law.  According to Howmedica, "there is no legally required threat of 'immediate and

vigorous enforcement' to make out a claim of equitable estoppel."  Docket No. 255 at 12.

Howmedica quoted *ABB Robotics, Inc. v. GMFanuc Robotics Corp.,* 52 F.3d 1062, 1064

(Fed. Cir. 1995), wherein the Federal Circuit stated, "that an immediate threat of

enforcement followed by silence may be the most common scenario does not mean that it

is the only set of facts which can support a finding of misleading silence." *ABB Robotics*,

52 F.3d at 1064.

Here, there is no dispute as to what conduct occurred between the parties.  The

parties agree that there was communication from September 1999 through August 1, 2000

and then silence until June 2002, at which time Zimmer filed this lawsuit.[21]  Rather, the

disputes are over whether there existed a threat of immediate and vigorous enforcement

preceding the period of silence and whether Howmedica reasonably inferred that Zimmer

---

[21]On September 21, 1999, Zimmer sent a letter to Howmedica's President, Mr. Jack O'Mahony, notifying Howmedica that Zimmer is the owner of the '313 patent and requested Howmedica's "comments as to the correlation between [Zimmer's] enclosed patent and the tibial plate and extension" as illustrated in a copy of a press release for the Duracon which Zimmer attached to the letter.  Docket No. 184, Exhibit G.  On November 23, 1999, Zimmer sent another letter to O'Mahoney as a follow-up to the September 1999 letter and again requesting Howmedica's analysis of the '313 patent relative to Howmedica's products.  Docket No. 184, Exhibit H.  In January of 2000, Howmedica responded to Zimmer's letters stating that it desired "to avoid litigation and resolve this matter and would be interested in any proposals Zimmer may suggest."  Docket No. 184, Exhibit I.

did not intend to bring a patent infringement suit against Howmedica based on the period of silence between the August 2000 letter and the time this suit was filed in June 2002.

Zimmer's September 1999 and November 1999 letters notify Howmedica of the '313 patent and request comments and analysis as to the correlation between the '313 patent and the tibial plate and extension contained in Howmedica's products.  In a letter sent on May 11, 2000, Zimmer offered Howmedica a license under the '313 patent.  More specifically, that letter discussed Howmedica's advertising of the Duracon knee system and of the attractiveness and flexibility of a system which includes an offset stem. Zimmer offered Howmedica a non-exclusive license under the '313 patent for an initial payment and a percentage royalty on net sales of any system using the offset adapter. Zimmer stated, "We would be interested in possibly reducing either the up-front payment or royalty in exchange for rights in your patented technology of substantive value." Docket No. 184, Exhibit J.  Zimmer concluded by stating,  "Please review this offer with your client and let me know if I should begin to prepare the appropriate papers."  Docket No. 184, Exhibit J.   This offer was rejected by Howmedica in August 2000, at which time Howmedica invited discussions with Zimmer regarding a cross-license.  Docket No. 184, Exhibits J. And K.  There was no communication between Zimmer and Howmedica until Zimmer filed this cause of action in June 2002.

Here, there is nothing in the communications between Zimmer and Howmedica that constitutes a threat of immediate or vigorous enforcement of Zimmer's patent rights.

*Meyers v. Brooks Shoe*, 912 F.2d1459, 1464 (Fed. Cir. 1990); *Hottel Corp. v. Seamen Corp.*, 833 F.2d 1570, 1573 (Fed. Cir. 1987). These letters are less "threatening" than others the Federal Circuit found insufficient to support an inference that a party would not sue. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1308-09 (Fed. Cir. 1992). Further, there do not exist "other facts" in this case, apart from the parties' communications and period of silence, sufficient to support an inference that Zimmer had abandoned its claims. The cases that Howmedica cites to circumvent the immediate and vigorous enforcement requirement simply do not apply to this case. *See Meyers v. Brooks Shoe*, 912 F.2d1459, 1464 (Fed. Cir. 1990) (a patentee's silence following communications with an infringer can only constitute misleading conduct where a patentee first "threatened immediate or vigorous enforcement of its patent rights but then did nothing for an unreasonably long time."). Accordingly, no reasonable jury could find that Zimmer's communications in the aforementioned letters amount to a threat of immediate and vigorous enforcement. Without a threat of immediate and vigorous enforcement, case law does not support the conclusion that the one year and ten month period of silence alone was misleading. Because Howmedica has failed to establish these elements, the equitable estoppel defense is not available, and partial summary judgment is granted in Zimmer's favor.

## VI. Conclusion

The following issues raised in Zimmer's Motion for Partial Summary Judgment on Howmedica's Invalidity Defense are moot: (1) the Greenwald patent does not anticipate

49

or render obvious any asserted claim of the '313 patent; (2) the Greenwald patent and the '305 patent together do not render obvious claim 16 of the '313 patent; (3) No asserted claim of the '313 patent is invalid for failure to comply with 35 U.S.C. § 112; and (4) No asserted claim of the '313 patent is invalid for failure to comply with 35 U.S.C. §§ 102(c), 102(d), 102(e), 102(f), and 102(g).  (Docket No. 183).

Howmedica's Motion for Summary Judgment of Invalidity of claims 1-4, 6, 8, 9, 13, 14, 16, and 17 of the '313 patent is DENIED (Docket No. 217).  Zimmer's Motion for Summary Judgment that the Greenwald and Fabian patents together do not render obvious claims 13 and 14 of the '313 patent is also DENIED.  (Docket No. 183).  Partial summary judgment is GRANTED on Zimmer's motion that its infringement claims are not limited by the doctrine of equitable estoppel (Docket No. 183).

Summary judgment is DENIED on Howmedica's motion for summary judgment of non-infringement, either literally or under the doctrine of equivalents (Docket No. 216).  Partial summary judgment is also DENIED on Howmedica's motion for summary judgment of non-infringement of unasserted claims 5, 7, 10-12, and 15 of the '313 patent (Docket No. 217).

**SO ORDERED.**

**Dated: September 28 , 2006**

**_____S/ ALLEN SHARP_____**
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**