# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| **ZIMMER TECHNOLOGY, INC. and** | ) | |
| **ZIMMER, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **3:02-CV-425** |
| | ) | |
| **HOWMEDICA OSTEONICS CORP.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM, ORDER & OPINION</u>

This matter is before the Court on the Motion for Summary Judgment [DE 372] filed by Defendant Howmedica Osteonics Corp. ("Howmedica" or "Defendant"), the Motion for Summary Judgment of No Willful Infringement [DE 388] filed by Howmedica, the Motion for Partial Summary Judgment on Howmedica's Invalidity Defense and Counterclaim [DE 400] filed by Plaintiffs Zimmer, Inc. and Zimmer Technology, Inc. (collectively "Zimmer" or "Plaintiffs"), and the Motion to Strike [DE 440] filed by Zimmer.  The issues have been fully briefed.

## I.  Background

On April 3, 2003, the Court denied Zimmer's Motion for Summary Judgment of Infringement of U.S. Patent No. 5,290,313, ("the '313 patent") entitled "Offset Prosthetic Stem Extension," and granted the Motion for Summary Judgment of Noninfringement filed by Howmedica.  *Zimmer Inc. v. Howmedica Osteonics Corp.*, 258 F.Supp.2d 874 (N.D. Ind. 2003). On May 26, 2004, the United States Court of Appeals for the Federal Circuit reversed and remanded the case to this Court for further proceedings in accordance with its opinion.  Judge Allen Sharp entered a final *Markman* claim construction order on October 12, 2005.  Several

motions for summary judgment have previously been ruled on in this case.

On April 19, 2007, Judge Sharp granted Zimmer's motion for reconsideration and re-opened discovery in this case.  A new discovery deadline of September 10, 2007 was implemented, allowing the parties to take related depositions and written discovery and to file summary judgment motions related to the 1978 Hospital for Special Surgery Implant ("1978 HSS Implant").  In addition to several *Daubert* motions, the parties have filed three motions for summary judgment and a motion to strike.

## II.  Patents and/or Devices at Issue

A.  The '313 Patent

Zimmer is the assignee of U.S. Patent No. 5,290,313 ("the '313 patent).  The '313 patent was filed by Mark A. Heldreth ("Heldreth") with the United States Patent and Trademark Office ("USPTO") on November 23, 1992, and the patent issued on March 1, 1994.  The '313 patent is directed to a modular system for surgically-implanted prosthetic joints and covers an offset prosthetic stem extension.  The '313 patent describes a modular implant system that replaces human joints and bones and was described primarily, though not exclusively, for use with prosthetic knee joints.  The "principle object" of the '313 patent is a stem extension "which has an offset between its attachment point to the prosthesis base portion and the main body of the stem." '313 patent, col. 1, ll. 44-48.  The '313 patent states that an offset stem extension is a "beneficial option" for patients in which "the intramedullary canal is not centrally located." '313 patent, col. 2, ll. 13-18.

The '313 patent is comprised of a modular prosthesis system wherein the base portion (10) and a stem extension (1) are joined together and inserted into a bone.  The base portion  is

comprised of a base mounting means (12), and the stem extension is comprised of a stem mounting portion (2) and an elongated stem portion (3). These are joined by the connection portion (4). '313 patent, col. 2, ll. 50 - col. 3, ll. 9. This base portion is then attached to the stem extension by mounting the base mounting portion on the stem mounting portion. The extending tapered pin (33) of the stem mounting portion mates with the corresponding tapered recess (43) of the base mounting portion in a "Morse taper." The axis of the Morse taper (A) is offset from the axis of the elongated stem portion (B) by offset (O). The substantially parallel, central longitudinal, offset axis of the '313 patent allows the elongated stem portion to be inserted into the intermedullary canal of the tibia, while allowing the base portion to remain centered relative to the resected bone surface. '313 patent, fig. 9, col. 3, ll. 9-44. During surgery, the '313 patent can be rotated around its attachment point to the base portion, allowing it to be moved relative to the stem extension and thus allowing the surgeon to achieve maximum coverage of the resected surface. However, once the desired position is selected, the stem extension is fixed with respect to the base portion. The '313 patent contains seventeen (17) claims. Claim 1 is an independent claim, and claims 2 through 17 are dependent upon claim 1. Zimmer argues that Howmedica's accused products contain every limit of claim 1 of the '313 patent, thus infringing upon the '313 patent.

B. The '920 Patent

The application for U.S. Patent No. 5,782,920 ("the '920 patent") was filed with the USPTO on November 14, 1996. The '920 patent issued on July 21, 1998, after the '313 patent issued. Howmedica manufactures the Duracon Total Stabilizer ("Duracon") and the Scorpio TS ("Scorpio") as a licensed user of the '920 patent. The Duracon and Scorpio products include

3

"orthopedic prosthesis components for use in revision knee surgery." Howmedica's

Memorandum in Support of its January 24, 2006 Motion for Summary Judgment at 7.

The '920 patent describes a system that includes a base portion/tray element (12) that is

joined to an elongated stem portion (14). Before assembly, the adapter element (16) is separate

from the stem portion, and it is attached to the elongated stem portion by a threaded connection.

The base portion (12) is then attached to the connection portion by a second threaded connection

rather than by a Morse taper.

C. The Greenwald Patent

The USPTO issued U.S. Patent No. 4,106,128 ("the Greenwald patent"), entitled

"Endoprosthetic Bone Joint," to Seth A. Greenwald, *et al*. on August 15, 1978. The Greenwald

patent was designed primarily to cover "prosthetic joints of the type used to replace

dysfunctional, non-weight bearing joints, such as the knuckle, wrist, elbow or shoulder."

Greenwald Patent Abstract. The preferred embodiment comprises a radial component connected

by a concavo-convex socket component to a metacarpal component. *Id*. The radial component

(10) includes an intramedullary stem (11) terminating in a radial cup (13). The radial cup (13)

has a plurality of inwardly extending pins.

In the Greenwald patent:

The concavo-convex socket component is retained in the cup by the articulation of
the pins with a plurality of flats which communicate with slots which terminate in
apertures. The concavo-convex component includes an opening extending
inwardly from one end thereof which defines two communicating bearing
surfaces, with the innermost surface being spherical and the outer surface being
frusto-conical and having an elliptical cross-section.

Greenwald Patent Abstract. The joint is comprised of a metacarpal component (30), which

4

includes a ball (31), a neck area, and an intramedullary stem (34).  The socket (20) surrounds the ball (31) of the metacarpal component and mates with the inside cup portion of the radial component.  *Id.* at col. 4, ll. 45-47; col. 5, ll. 20-28.  Greenwald teaches that the lack of metal-to-metal contact in this joint is "beneficial to the friction and wear characteristics of the device."  *Id.* at col. 3, ll. 15-20.

D.  The Fabian Patent

Dennis F. Fabian, *et al.*, filed the application for U.S. Patent No. 4,936,853 ("the Fabian patent") on January 11, 1989.  The Fabian patent issued on June 26, 1990, and the current assignee is Kirschner Medical Corporation.  Fabian Patent Abstract.  The Fabian patent:

> relates to an implantable knee joint prosthesis which is designed to replace the engaging surfaces of the femur and tibia of a dysfunctional human knee joint. In its most general form, the invention comprises an implantable knee joint prosthesis having a tibial stem portion, a tibial tray portion, an interchangeable modular articulating surface member which is removably attached to the tibial tray portion, and a femoral portion adapted to cooperatively bear upon the articulating surface. The invention also features a dual locking mechanism which attaches the articulating surface to the tibial tray portion by means of a locking lip and flange arrangement together with a locking screw which fits into the tibial stem portion.

Fabian Patent Abstract.

The Fabian patent is directed to a modular knee prosthesis with modular interchangeable articulating surfaces.  It includes a base portion (24) having a base mounting means (22), a stem extension (10) for insertion into a cavity of a bone,  having with a Morse taper stem mounting means (12) for mounting the stem extension (10) to the base mounting means (22), and the stem extension (10) having an elongated stem portion.  Fabian Patent at col. 2, ll. 2-9.

Zimmer identified the Fabian patent to the USPTO, it was considered by the patent

examiner, and the '313 patent was allowed over Fabian. '313 Prosecution History at HM00057-58. Howmedica admits that the Fabian patent lacks a longitudinally offset stem extension, which is a claimed element from the '313 patent. *See* DE 218-1 at 13.

E. The 1978 HSS Implant

The 1978 HSS Implant is a knee implant designed by Dr. Albert H. Burstein while he was employed at HSS. It allegedly is described in a drawing dated June 14, 1978 that identifies the device as HSS implant number 1023 ("HSS #1023"). The 1978 HSS Implant was developed using a Codman Total Condylar 3 component with the original stem cut off. Dr. Burstein stated that a longitudinally offset stem extension was designed and used in the 1978 HSS Implant.

F. The Insall/Burstein II

The Insall/Burstein II Modular Knee System ("IB-II" or "IB-II knee system") is a knee system comprised of posterior stabilized femoral components, tibial tray components, fluted rod components, and a bowed femoral stem extension. The posterior stabilized femoral component replaces the articulating surface of the medial and lateral condyles of the distal femur. The tibial tray component resurfaces the resected proximal tibia and holds the appropriate tibial articular surface. The fluted rod component attaches to the stem base on the bottom of the tibial tray to provide additional fixation stability. It is secured by a Morse-type taper and a screw. And the bowed femoral stem extension attaches to the stem base of the CCK femoral component and is secured by a Morse-type taper and screw. *See* Zimmer, Inc. 1991 Catalog, ZIM001278 [DE375-9] at 2-3.

### III. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

proper only if there is no genuine issue as to any material fact, the trial court has properly

construed the claims, and the moving party is entitled to judgment as a matter of law. *Lockwood*

*v. American Airlines Inc.*, 107 F.3d 1565, 1576 (Fed. Cir. 1997). *See also Nebraska v. Wyoming*,

507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding a

motion for summary judgment, a court must view all facts in the light most favorable to the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v.*

*Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). When parties file cross

motions for summary judgment, each motion must be assessed independently, and denial of one

does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369

(7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to

judgment as a matter of law on the issues within its motion and that trial is the appropriate course

of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d

224, 230 (7th Cir. 1996).

 The moving party bears the burden of identifying those portions of "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits" that

the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477

U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing

that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs.,*

*Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). *See also Beard v. Whitley County REMC*, 840 F.2d 405,

410 (7th Cir. 1988)(stating that "a party who bears the burden of proof on a particular issue may

not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that

there is a genuine issue of material fact which requires trial."). Therefore, if a party fails to

establish the existence of an essential element on which the party bears the burden of proof at

trial, summary judgment is proper.  In this situation, there can be "'no genuine issue of any

material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## IV.  Motion to Strike

On December 4, 2007, Zimmer filed a Motion to Strike [DE 440], pursuant to Local Rule

56.1(d), Federal Rule of Civil Procedure 26(a) and 37(c), and Federal Rule of Evidence 702.

Under the federal rules, witnesses can be divided into three categories: lay witnesses (also known

as fact witnesses), expert witnesses, and retained expert witnesses.  Expert witnesses must be

disclosed pursuant to Fed.R.Civ.P. 26.  Rule 26(a)(2)(B) requires any witness who is retained or

specifically employed to present expert testimony to provide a written report setting forth the

opinions to be offered at trial and the bases therefor.  Under Fed.R.Evid. 701, a lay person may

offer opinion testimony providing the witness testifies to what he or she has perceived firsthand.

*See also Harms v. Laboratory Corp. of America*, 155 F.Supp.2d 891, 904 (N.D. Ill. 2001).

Zimmer requests that the Court strike the opinion testimony from Dr. Burstein and the

portions of Howmedica's Opposition to Zimmer's Motion for Partial Summary Judgment which

cite and rely upon Dr. Burstein's testimony.  Zimmer contends that Dr. Burstein is a fact witness

in this case and can testify about facts relevant to the 1978 HSS and 1987 HSS Implants.

Zimmer contends, however, that Dr. Burstein cannot offer expert opinions in this case because

Howmedica did not disclose him as an expert witness and because Dr. Burstein has not filed an

expert report disclosing and explaining his opinions as required under Rule 26(a).  Zimmer's

Motion to Strike [DE 440] at 2.  Specifically, Zimmer seeks to strike (1) Dr. Burstein's testimony

relating to the 1978 HSS Implant's "releasably fixed" and "radially adjustable" properties and (2) Howmedica's opposition arguments relating to the "releasably fixed" and "radially adjustable" features of the 1978 HSS implants.

Howmedica contends that its opposition arguments relating to the "releasably fixed" and "radially adjustable" features of the 1978 HSS implants are not based solely on Dr. Burstein's testimony but are supported by other evidence and, as such, should not be stricken.  Howmedica cite several cases in which courts have found that it is proper for witnesses to testify regarding such things as a product's design and features, design rationale, manufacturing, and properties.[1] Accordingly, Howmedica asserts that Dr. Burstein's testimony is proper fact testimony and, as such, Zimmer's motion should be denied.  Howmedica's Response [DE 466] at 2.

Howmedica has represented to the Court that Dr. Burstein is merely a fact witness and not an expert witness and that Dr. Burstein will provide factual descriptions of the 1978 HSS Implant's design and properties, will explain why he designed the implant in the particular manner he chose, will describe features he designed into the 1978 HSS Implant, and will explain the properties and capabilities of the implant that he designed.  Insofar as these representations are correct – and the Court finds that they are– Dr. Burstein is properly considered a fact witness and not an expert witness.  Accordingly, Zimmer's Motion to Strike is denied.  The parties are cautioned that the extent of Dr. Burstein's testimony will be determined at trial.

---

[1]Howmedica cited the following cases: *Knowles Elecs., LLC v. Microtronic U.S., Inc.*, 2000 WL 310305 (N.D. Ill. Mar. 24, 2000); *Lemelson v. General Mills, Inc.*, 1987 WL 12999 (N.D. Ill. June 19, 1987); *NPF Ltd. v. Smart Parts, Inc.*, 187 Fed. Appx. 973, 979 (Fed. Cir. 2006); *Ty, Inc. v. Softbelly's Inc.*, 353 F.3d 528, 534 (7th Cir. 2003).

**V. Discussion**

A. Estoppel

Zimmer argues that Howmedica is estopped from arguing that any alleged prior art

reference is 35 U.S.C. §§ 102(f) and (g) prior art because Howmedica abandoned this theory in

2006 when it responded to Zimmer's January 3, 2006 motion for summary judgment. Zimmer's

Response [DE 401] at 16. Howmedica claims that the legal claim that it agreed not to pursue in

early 2006 was a claim of invalidity based on the then-known prior art which did not include the

1978 HSS Implant prior art. According to Howmedica, estoppel does not apply to defenses made

possible by later-acquired factual evidence in the course of discovery. Howmedica's Opposition

[DE 429] at 25 (citing *Ezekiel v. Michel*, 66 F.3d 894, 905 (7th Cir. 1995). Howmedica also

asserts that wavier does not apply because it did not intentionally waive a known right. *Id*.

Judicial estoppel is an equitable doctrine "intended to prevent the perversion of the

judicial process" and that is designed to protect the courts. *In the Matter of Cassidy*, 892 F.2d

637, 641 (7th Cir. 1990), *cert. denied*, 498 U.S. 812 (1990). Because it is an equitable concept,

the application of judicial estoppel is within the court's sound discretion. *Id.* at 642. It "prevents

a party that has taken one position in litigating a particular set of facts from later reversing its

position when it is to its advantage to do so." *Levinson v. United States*, 969 F.2d 260, 264 (7th

Cir. 1992), *cert. denied*, 113 S.Ct. 505 (1992). *See also Cassidy*, 892 F.2d at 641 (stating that

judicial estoppel prevents litigants from "playing fast and loose with the courts."). However,

judicial estoppel should not be used "where there is only an appearance of inconsistency between

the two positions but both may be reconciled." *Cassidy*, 892 F.2d at 642. A related concept is

that of waiver. Waiver is the intentional relinquishment of a known right. *United States v.*

10

*Charles*, 476 F.3d 492, 495 (7th Cir. 2007).

The doctrines of judicial estoppel and waiver do not apply in this case because there is no self-contradiction in Howmedica's positions.  At the time Howmedica made its averments regarding § 102(f) and § 102(g), the 1978 HSS Implant and related documents were not known to any of the parties.  Accordingly, there could have been no intentional relinquishment of a known right.  Moreover, Howmedica's averments were not made in an attempt to lull Zimmer into not preparing a defense under these theories.  The "new  discovery" of the 1978 HSS Implant is the very reason this Court reopened discovery and allowed the parties to submit new dispositive motions on issues related to the 1978 HSS Implant.  Had this case gone to trial as it was scheduled at the time of the previous summary judgment motions, and had discovery related to the 1978 HSS Implant not been reopened, Howmedica would not have asserted any theories under § 102(f) or § 102(g).  But those are not the circumstances presently before the Court.  The Court thus finds that Howmedica was not "playing fast and loose with the facts" in order to obtain an unfair advantage.  Accordingly, while this may be a close question, the Court finds that judicial estoppel and waiver do not apply in this case.

B.  Howmedica's Motion for Summary Judgment [DE 372] and Zimmer's Motion for Partial Summary Judgment on Howmedica's Invalidity Defense and Counterclaim [DE 400]

Howmedica filed its Motion for Summary Judgment [DE 372] on October 23, 2007, stating that it is entitled to summary judgment of invalidity under 35 U.S.C. § 103 as to the asserted claims of the '313 patent (i.e., claims 1-4, 6, 8-9, 13-14, and 16-17).  Specifically, Howmedica contends that the '313 patent is invalid for obviousness because (1) it is obvious to one of ordinary skill in the art to combine the 1978 HSS Implant (and its longitudinally offset

stem extension) with the Morse taper of either the Fabian or IB-II and (2) it is obvious to one of ordinary skill in the art to modify the straight modular prosthesis system to incorporate the longitudinally offset stem extension disclosed in either the 1978 HSS Implant or the Greenwald patent.  Zimmer filed its Motion for Partial Summary Judgment [DE 400] on November 9, 2007. Zimmer claims that it is entitled to summary judgment that (1) the 1978 HSS Implant custom prosthesis reference is not prior art to the '313 patent and thus cannot invalidate any asserted claim of the '313 patent; (2) Howmedica is precluded from asserting that the 1978 HSS Implant custom prosthesis reference or any other reference is prior art under 35 U.S.C. § 102(f) and § 102(g); (3) no alleged prior art reference is prior art under 35 U.S.C. § 102©, § 102(d),  § 102(e); § 102(f), and § 102(g); and (4) the 1978 HSS #1023 custom prosthesis reference cannot anticipate any asserted claim of the '313 patent.

Because many of the issues raised in the motions for summary judgment overlap, the motions for summary judgment will be discussed together.  However, because each party has raised several independent grounds upon which that party asserts it is entitled to summary judgment, each issue raised by the parties will be addressed individually.

1. Prior Art

Howmedica contends that it has discovered evidence of a thirty-year-old knee implant, namely the 1978 HSS Implant, that it believes invalidates the '313 patent.  This knee implant was allegedly designed, manufactured, and implanted into a patient at the Hospital for Special Surgery in 1978.  Howmedica contends that Zimmer's '313 patent is not valid because it is not the product of innovation, but of ordinary skill and common sense.  Zimmer, however, contends that it is entitled to summary judgment that the 1978 HSS Implant is not prior art to the '313

patent and thus cannot invalidate any asserted claim of the '313 patent.  Zimmer also contends

that no alleged prior art reference is prior art under 35 U.S.C. § 102(c), § 102(d),  § 102(e); §

102(f), and § 102(g).

A patent is invalid for obviousness if the differences between the subject matter sought to

be patented and the prior art are such that the subject matter as a whole would have been obvious,

at the time the invention was made, to a person having ordinary skill in the art.  35 U.S.C. §

103(a); *Alza Corp. v. Mylan Labs*., 464 F.3d 1286, 1291 (Fed. Cir. 2006).  In assessing the

differences between the subject matter sought to be patented and the prior art, the court must

consider the claimed invention as a whole.  Because inventions are typically new combinations

of existing principles or features, 35 U.S.C. § 103(a) prevents a court from evaluating the

invention part by part.[2]  *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004).

In *KSR*, the Supreme Court clarified the standard for determining when a patent that

claims a combination of elements of prior art is obvious and invalid under 35 U.S.C. § 103.

There, the Supreme Court held that the "teaching, suggestion, or motivation" ("TSM") test,

when properly applied, is consistent with the framework for determining obviousness under

Section 103.  *KSR*, 127 S.Ct. at 1741.  *See also DyStar Textilfarben GmbH & Co. Deutschland

KG v. C.H. Patrick Co.*, 464 F.3d 1356 (Fed. Cir. 2006) (stating that the TSM test is flexible

and "not only permits, but requires, consideration of common knowledge and common sense.").

And, as the Court in *KSR* stated, "any need or problem known in the field of endeavor at the

---

[2]In *Ruiz*, the Court stated, "[t]his form of hindsight reasoning, using the invention as a
roadmap to find its prior art components, would discount the value of combining various existing
features or principles in a new way to achieve a new result - often the very definition of
invention."  357 F.3d at 1275.

time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *KSR*, 127 S.Ct. at 1742.

The Court also affirmed that the *Graham* factors analysis controls the obviousness inquiry. *KSR*, 127 S.Ct. at 1727. *See also Takeda Chem Indus. Ltd. v. Alphapharm Pty. Ltd.*, 492 F.3d 1342 (Fed. Cir. 2007) (stating that there is "no necessary inconsistency between the idea underlying the TSM test and the *Graham* analysis."). The Court stated that the TSM test can provide "helpful insight" to an obviousness determination. *KSR*, 127 S.Ct. at 1727. Under the *Graham* analysis, underlying factual inquiries to the obviousness determination include: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the prior art; and (4) any objective evidence of non-obviousness, including long-felt but unsolved needs, commercial success, the failure of others, or evidence of copying.[3] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Every claim limitation of the invention at issue must be found to exist in the prior art references before the court will determine whether there was a teaching, motivation, or suggestion to combine those limitations found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art. *Abbott Laboratories v. Sandoz, Inc.*, 2007 WL 4287501, *18 (N.D. Ill. Dec. 4, 2007).

Because the obviousness determination begins by looking at the scope and content of the prior art and the differences between the prior art and the claims at issue, the first step for this

---

[3]"[P]recedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness." *Ruiz*, 234 F.3d at 663; *see Jones v. Hardy*, 727 F.2d 1524, 1529 (Fed. Cir. 1984) (hindsight and speculation found where a district court cited but did not apply the *Graham* factors); *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986).

Court is to determine whether the 1978 HSS Implant, the Greenwald patent, the Fabian patent, and/or the IB-II knee system constitute prior art to the '313 patent. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004). The parties have raised several independent grounds upon which these references could be prior art. For ease of clarity, the Court will first address each of the parties' arguments for whether the 1978 HSS Implant is prior art. Then, the Court will address each of the parties' arguments regarding whether the Greenwald patent, the Fabian patent, and/or the IB-II knee system constitute prior art.

### The 1978 HSS Implant

Howmedica first contends that the 1978 HSS Implant is both "known" and "used" prior art under 35 U.S.C. §102(a) and that it also constitutes prior art under §102(b) because it was in "public use" and "on sale." Howmedica also asserts that Mr. Korzenietz's logbook and sketch constitute prior art "printed publications" under 35 U.S.C. §§ 102(a) and (b). Finally, Howmedica asserts that the 1978 HSS Implant is prior art under 35 U.S.C. § 102(f) and § 102(g). If the 1978 HSS Implant satisfies the requirements of any of these provisions, it constitutes prior art to the '313 patent. Accordingly, each provision will be addressed in turn.

### I. "Known" Prior Art under 35 U.S.C. §§ 102(a)

Howmedica contends that the 1978 HSS Implant is prior art because the HSS #1023 was "known or used, in public use, on sale or sold, . . . by individuals at . . . at [HSS] in New York, New York in 1978." Howmedica's Sept. 6, 2007 Supp. Resp. to Zimmer's Interrogatories at 13. Zimmer disagrees, asserting that because the implant depicted in HSS #1023 was maintained within the confidential hospital setting, was abandoned in June 1978, and was not sold or implanted, the 1978 HSS Implant is not "known," "public use," or "on sale" prior art.

Zimmer's Memo in Support [DE 401] at 8.

First, Howmedica contends that the 1978 HSS Implant is § 102(a) "known" prior art

because it was described in a drawing and in a corresponding log book entry, both dated June

14, 1978.  Howmedica stated that Mr. Willi Korzenietz (a machinist) prepared the drawing and

logbook entry at the direction of Dr. Burstein, the chief HSS Biomechanics engineer.

Howmedica's Memo in Support [DE 373] at 8.  Howmedica contends that the "single-page

drawing of the 1978 HSS implant is sufficiently detailed to allow one of ordinary skill in the art

to make a stem extension with offset longitudinal axes without undue experimentation."  *Id*.

Howmedica further asserts that Dr. Timothy Wright, an HSS orthopedic designer at the time,

among others, knew of the 1978 HSS Implant, and states that the 1978 HSS Implant was

publicly accessible.  *Id*. (citing Wright Decl. at ¶ 21).  Howmedica stated that the fact that HSS

provided Zimmer with the 1978 HSS Implant drawing and logbook with only the patient name

redacted, on a non-confidential basis, illustrates the fact that anyone could obtain copies of the

1978 HSS Implant information.  In other words, Howmedica contends that the technology

information was publicly accessible.  Howmedica's Memo in Support [DE 373] at 9-10.

In contrast, Zimmer asserts that knowledge of an invention cannot be prior art unless it is

publicly known.  Zimmer's Reply [DE 437] at 6.  According to Zimmer, "[t]hat the 1978 HSS

implant might have been known to three people acting together inside an HSS lab is legally

inadequate because nobody at HSS ever disclosed the implant to the public.  Zimmer's Reply

[DE 437] at 7.  Moreover, Zimmer disagrees with Howmedica's assertions regarding public

accessibility, stating that because the HSS #1023 implant and any related documents remained

within the confidential hospital setting, and because neither the HSS biomechanics laboratory or

the operating room were open to the public, the HSS #1023 implant and related documents were not publicly accessible.

Section 102 states that "a person shall be entitled to a patent unless (a) the invention was known or used by others in this country, . . . before the invention thereof by the applicant for patent, or (b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102.  To constitute prior art under § 102(a) as being "publicly known," the "knowledge must have been accessible to the public." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed.Cir.1998).  Additionally, this publicly accessible "disclosure must be sufficient to enable one with ordinary skill in the art to practice the invention." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed.Cir.2002) (citing *In re Borst*, 52 C.C.P.A. 1398, 345 F.2d 851, 855 (1965)).  Moreover, § 102(a) does not cover private or secret knowledge; therefore, private or secret knowledge is not part of the prior art that can anticipate the subject matter in a patent application.  *See Connecticut Valley Enterprises, Inc. v. U.S.*, 348 F.2d 949, 952 (Ct. Cl. 1965) (stating, "[e]ven if the nature of the device is such that the contested features are evident from the device itself, the prior knowledge will not be anticipatory if it has been kept secret by an actual and deliberate effort.").

It is not clear that the 1978 HSS Implant met these requirements.  While the 1978 HSS Implant drawing and logbook may have been made in the regular course of business, the Court agrees with Zimmer that there is insufficient evidence regarding whether those documents were freely accessible.  Because there is not substantial evidence to overcome the presumption of validity, the '313 patent cannot be anticipated as "known by others in this country . . . before the

invention thereof by the applicant for patent" under § 102(a).   As such, the Court denies

Howmedica's motion for summary judgment on this issue and grants Zimmer's motion for

summary judgment that the 1978 HSS Implant is not "known" prior art under 35 U.S.C. §

102(a).

### 2.  "Used" Prior Art under 35 U.S.C. § 102(a) and (b)

Next, Howmedica contends that the 1978 HSS Implant is § 102(a) "used" prior art

because it was implanted into a patient – "J. Beyda" – in the United States. To corroborate this

contention, Howmedica pointed to Mr. Korzenietz's testimony that he made the 1978 HSS

Implant according to the drawing he prepared at the direction of Dr. Burstein.  Korzenietz Tr. at

40:23-41:22.  Howmedica also relied on the testimony of Dr. Burstein, which stated that the

prosthesis was made and implanted.  Burstein July 13, 2007 Tr. at 208:14-19 and 185:11-185:4;

Burstein Decl. at ¶¶ 21-23; Wright Decl. at ¶ 21.  Howmedica further contends that the medical

records for the patient named in the drawing and logbook show that on October 19, 1978, the

1978 HSS Implant was surgically implanted into that patient, namely J. Beyda.  Howmedica's

Memo in Support [DE 373] at 14 (citing Wright Decl. at ¶ 14; Burstein Decl. at ¶¶ 21-23).

Howmedica also contends that the 1978 HSS Implant constitutes prior art under the

"public use" provision of § 102(b).  "Public use" under 35 U.S.C. § 102(b) means "any use of

the claimed invention by a person other than the inventor who is under no limitation, restriction

or obligation of secrecy to the inventor."  *Chemque,* 303 F.3d at 1301 (citing *Netscape Comm.*

*Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed.Cir.2002)). Invalidity based on a § 102(b) public

use is a question of law based on underlying questions of fact. *Id*. at 1301. Howmedica contends

that the "non-secret use of the 1978 HSS implant during surgery constitutes an invalidating prior

art 'public use.'"  Howmedica's Memo in Support [DE 373] at 10-11.

Zimmer, however, contends that the records and testimony show that the HSS #1023 was completed on June 14, 1978, but was not implanted in June 1978.  Zimmer argues that the the operation records from June 15, 1978 show that the patient for whom HSS #1023 was created was anesthetized for surgery, but problems were encountered so the patient did not receive an implant.  Zimmer's Memo in Support [DE 401] at 9 (citations omitted).  Zimmer admits that the patient was successfully implanted on October 18, 1978, but Zimmer asserts that the patient was implanted with a "'specially-made . . . total condylar type II prosthesis' – not the HSS #1023."  *Id.* at 10 (citations omitted).  Morever, Zimmer contends that neither the October 1978 invoice nor the 1983 implant removal records identify or describe the HSS #1023, and, according to Zimmer, the implant itself that was removed in 1983 appears to no longer exist.  *Id.* Zimmer further contends that the documentary evidence and the testimony of Mr. Korzenietz establishes that the HSS #1023 was abandoned after the June 15, 1978 surgery.  Zimmer states that Mr. Korenietz logged no activity with the HSS #1023 after the failed June 1978 surgery and asserts that there is no reference to HSS #1023 in any HSS record dated after June 15, 1978.  In sum, Zimmer argues that public use of the HSS #1023 requires actual and non-experimental use and that a knee prosthesis – like the HSS #1023 – is not used until it is implanted into a patient. Zimmer's Reply [DE 437] at 7-8.

Several pages of the many briefs recently filed in this case focus on the issue of whether the 1978 HSS Implant (or HSS #1023) was used by others in this country before the invention thereof by the applicant for patent.  While it seems to be undisputed that even if the 1978 HSS Implant (or HSS #1023) was used, it was used once and was never used again.  The fact

19

remains, however, that the both parties spend considerable ink supporting their respective claim

that the 1978 HSS Implant was or was not actually used, and, in the process, raise several issues

of material fact.  Specific instances of a genuine issues of material fact include whether the

implant was surgically implanted into a patient by the name of "J. Beyda" and whether the

implant that was implanted was, in fact, the HSS #1023.  These, among other factual disputes,

are for the jury to decide.  Accordingly, the Court denies Howmedica' motion for summary

judgment insofar as it seeks a ruling that the 1978 HSS Implant constitutes "used" prior art

under 35 U.S.C. § 102(a) or prior art under the "public use" provision of section 102(b).  The

Court also denies Zimmer's motion for summary judgment as it relates to this issue.

### 3.  *"On Sale" Prior Art under 35 U.S.C. § 102(b)*

Howmedica contends that the 1978 HSS implant constitutes prior art under section

102(b)'s "on-sale" bar. An invention was "on sale" if the claimed invention was embodied in

the thing sold or commercially offered for sale as defined under the Uniform Commercial Code.

*See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998); *Group One, Ltd. v. Hallmark Cards,*

*Inc.*, 254 F.3d 1041, 1047 (Fed. Cir. 2001).  There are two conditions for an on-sale bar: (1) the

invention must be the subject of a commercial offer for sale, and (2) the invention must be ready

for patenting.  *Pfaff*, 525 U.S. at 67-68.  There is no requirement that a sale actually be made,

and an offer for sale is sufficient to trigger the on-sale bar.  *See In re Caveney*, 761 F.2d 671,

676 (Fed. Cir. 1985) (a single sale or offer for sale triggers the "on sale" bar of § 102(b)).  The

ready for patenting condition may be satisfied by "proof of reduction to practice before the

critical date; or by proof that prior to the critical date the inventor had prepared drawings or

other descriptions of the invention that were sufficiently specific to enable a person skilled in

the art to practice the invention." *Pfaff*, 525 U.S. at 67.

Howmedica asserts that "the 1978 HSS Implant was sold more than a decade before the '313 patent's filing date. This sale is evidenced by an invoice dated October 28, 1978." Howmedica's Opposition [DE 429] at 16 (citations omitted). According to Howmedica, the invoice identifies a "long stem modified" prosthesis as the device sold and identifies Mr. Beyda as the same patient identified in the 1978 HSS Implant drawing, the corresponding log book entry, and all related medical records. *Id.* at 16-17. Howmedica argues that it follows that the HSS #1023 was implanted into Mr. Beyda. Zimmer contends that Howmedica relies only on the uncorroborated testimony of Dr. Burstein, Dr. Wright, and ambiguous hospital records to establish that HSS #1023 was sold. Zimmer's Memo in Support [DE 401] at 10. Zimmer contends that the uncorroborated "recollection" testimony from Dr. Burstein and Dr. Wright is legally insufficient to prove a prior use or sale. *Id.* at 10-11.

It is well established that "uncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of [a] patent." *Lacks Ind., Inc. v. McKechnie Vehicle Components USA, Inc*., 322 F.3d 1335, 1350 (Fed. Cir. 2003). *See also Oney v. Ratliff*, 182 F.3d 893, 896 (Fed. Cir. 1999) (noting that the "uncorroborated oral testimony of . . . the inventor and his close associates would be insufficient to prove invalidity"); *Woodland Trust*, 148 F.3d at 1368 (outlining eight factors for evaluating the credibility of an interested witness). The Federal Circuit has also extended the corroboration requirement to uninterested witnesses. *See, Finnigan Corp. v. International Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999) (holding that any witness whose testimony alone is asserted to invalidate a patent must be corroborated). However, the "oral testimony of someone other than the alleged

21

inventor may corroborate an inventor's testimony." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001). Moreover, "physical evidence and oral testimony of a disinterested party can serve to satisfy the corroboration requirement." *TypeRight*, 374 F.3d at 1159.

Here, Zimmer has identified specific facts that tend to discredit the testimony of Dr. Burstein and Dr. Wright. As previously stated, Zimmer admits that the patient was successfully implanted on October 18, 1978, but Zimmer asserts that the patient was implanted with a "'specially-made . . . total condylar type II prosthesis' – not the HSS #1023." Zimmer's Memo in Support [DE 401] at 10 (citations omitted). Morever, Zimmer contends that neither the October 1978 invoice nor the 1983 implant removal records identify or describe the HSS #1023. *Id*. These facts create a genuine issue as to the credibility of Howmedica's witnesses. Thus, while the evidence is likely sufficient to support a jury finding that the 1978 HSS Implant is prior art under the on-sale bar of § 102(b), a reasonable jury could ultimately conclude otherwise. Accordingly, it is within the province of the jury to determine if the 1978 HSS Implant is prior art under § 102(b)'s on-sale bar. The Court denies Howmedica' motion for summary judgment insofar as it seeks a ruling that the 1978 HSS Implant constitutes prior art under the "on-sale" bar in section 102(b). The Court also denies Zimmer's motion for summary judgment as it relates to this issue.

### 4.  *"Printed Publication" under 35 U.S.C. §§ 102(a) and (b)*

Howmedica contends that the 1978 HSS Implant single-page drawing is a prior art "printed publication." Howmedica's only argument to support this contention is that "the 1978 HSS implant drawing was filed and logged at HSS, and 'interested members of the relevant

22

public could obtain the information if they wanted to.'"  Howmedica's Memo in Support [DE

373] at 16-17 (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed.

Cir. 1988)).  Zimmer contends, however, that because Mr. Korzenietz's logbook and sketch

were neither distributed to the public or indexed, they were not publicly accessible.  Zimmer

asserts that it matters not that "Howmedica's lawyers were able to produce 'non-confidential'

documents *in this litigation* after first redacting the confidential material" because "no

'technically or scientifically qualified person could have had a copy . . . merely for the asking.'"

Zimmer's Memo in Support [DE 401] at 13-14 (quoting *Ex parte Kroenert*, 144 U.S.P.Q. 133

(Pat. Off. Bd. Appl. 1960).  Zimmer also stated that it was able to obtain copies directly from

HSS only by issuing a subpoena.

> Section 102 provides in pertinent part:

> [a] person shall be entitled to a patent unless (a) the invention was . . .  described
> in a printed publication in this or a foreign country, before the invention thereof
> by the applicant for patent, or (b) the invention was . . . described in a printed
> publication in this or a foreign country . . . more than one year prior to the date of
> the application for patent in the United States.

35 U.S.C. § 102 (2000). Thus, where a product embodying a patent is described in a printed

publication more than one year prior to the application date of that patent, the patent-holder

loses his right to enforce the claims of his patent.  *Id.*  The key inquiry is whether or not a

reference has been made "publicly accessible."  *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed.

Cir. 2004).  In *Klopfenstein*, the Court stated:

> The statutory phrase "printed publication" has been interpreted to mean that
> before the critical date the reference must have been sufficiently accessible to the
> public interested in the art; dissemination and public accessibility are the keys to
> the legal determination whether a prior art reference was "published."

*Id.* (quoting *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)).  Among the relevant

considerations, the Court may consider whether the alleged prior art was sufficiently publicly

accessible, freely available to the general public, and whether it is cataloged and indexed**.**  The

printed publication bar:

> is grounded in the principle that once an invention is in the public domain, it is
> no longer patentable by anyone . . . Because there are many ways in which a
> reference may be disseminated to the interested public, "public accessibility" has
> been called the touchstone in determining whether a reference constitutes a
> "printed publication" bar under 35 U.S.C. § 102(b).

*In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986).

This Court has reviewed several cases in which documents were considered "printed

publications" within the meaning of 35 U.S.C. ¶ 102. For example, in *Massachusetts Institute of*

*Technology v. AB Fortia*, 774 F.2d 1104, 1108-1110 (Fed. Cir. 1985), the Federal Circuit held

that a paper delivered orally to the First International Cell Culture of Congress was a printed

publication because nearly 500 people of ordinary skill in the art heard the presentation and at

least six copies of the actual paper were distributed.  In *Hall*, a thesis that was filed and indexed

at a university library for more than one year before the filing of the relevant patent application

was held to constitute a printed publication.[4]  781 F.2d at 898.  The Court in *Klopfenstein* held

that a reference was a printed publication because the reference itself was shown for an

extended period of time to members of the public having ordinary skill in the art.  380 F.3d at

1352.  The Court noted that those members were not precluded from taking notes or

photographs.  *Id*.  And in *Helifix Ltd. v. Blok-Lok*, the Court held that brochures that were

---

[4]In *Hall*, the Court stated that indexing was one of many factors in determining public
accessibility.  781 F.2d at 898.

publicly distributed were considered printed publications.  208 F.3d 1339, 1346 (Fed. Cir.

2000).

Those cases, however, are distinguishable from this case.  While the 1978 HSS Implant

(or HSS #1023) was potentially disclosed to three people acting together inside an HSS lab, it

was never disclosed to the general public.  The public did not have access to the "publication"

prior to the critical date, and no copies of the related documents were made until during this

litigation.  Instead, the implant and related documents remained at HSS, where neither the

laboratory nor the operating room were open to the public.  The implant and the related

documents were not indexed or cataloged.  Therefore, there is no evidence that the 1978 HSS

Implant or related documents were disseminated or otherwise made available to the extent that

persons interested in the information could locate it and put to use the essentials of the claimed

invention.  Accordingly, the Court denies Howmedica' motion for summary judgment insofar as

it seeks a ruling that the 1978 HSS Implant is a prior art "printed publication" under 35 U.S.C.

§§ 102(a) and (b) and grants Zimmer's motion for summary judgment that the 1978 HSS

Implant is not a prior art "printed publication" under 35 U.S.C. §§ 102(a) and (b).

### 5. *Prior Art Under 35 U.S.C. § 102(f)*

Zimmer moved to preclude Howmedica from arguing that the 1978 HSS Implant is prior

art under § 102(f).  Zimmer argues that, "regardless of whatever was conceived in 1978,

Howmedica presents no evidence and there is no evidence of a communication from anybody at

HSS to anybody at Zimmer concerning the 1978 HSS reference."  Zimmer's Memo in Support

[DE 401] at 14-15.  Contrastingly, Howmedica contends that there "is evidence that Zimmer

and its engineers worked closely with HSS's Dr. Burstein and Dr. John Insall (the chief knee

surgeon at HSS) on knee implant designs shortly after the 1978 HSS Implant was made."
Howmedica's Opposition [DE 429] at 18.  For support, Howmedica cites to HSS log notebooks
and to its contention that Zimmer and Drs. Burstein and Insall worked together to design and
release the IB-II knee system.  *Id*. (citing Burstein Tr. at 153-155).  Finally, Howmedica states
that Dr. Burstein has served as a consultant and expert witness for Zimmer on several occasions
and that Dr. Insall acted as a consulting surgeon on Zimmer's NexGen product, which includes
the '313 patent claims.  *Id.*

Section 102(f) provides that "[a] person shall be entitled to a patent unless . . . he did not
himself invent the subject matter sought to be patented."  35 U.S.C. § 102(f).  To prove
derivation, "the party asserting invalidity must prove both prior conception of the invention by
another and communication of that conception to the patentee by clear and convincing
evidence."  *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003)
(internal citations omitted).  The "communication must be sufficient to enable one of ordinary
skill in the art to make the patented invention."  *Id*. (citing *Gambro Lundia AB v. Baxter Health
Care Corp.*, 110 F.3d 1573, 1578 (Fed. Cir. 1997)).  There is no requirement that the requisite
communication take place in any particular form or that it occur directly between the prior
inventor and the patentee.

The Court finds that Howmedica failed to prove that any communication or disclosure
between HSS (and/or Drs. Burstein and Insall) and Zimmer was sufficient in detail to enable a
person of ordinary skill in the art to practice the claimed invention.  Zimmer correctly asserted
that Howmedica pointed only to generalized information that Dr. Burstein worked with Zimmer
and that Zimmer commercialized an HSS design – the IB-II – which did not contain all of the

features of the 1978 HSS Implant.  Accordingly, Zimmer is entitled to summary judgment that

the 1978 HSS Implant is not prior art under 35 U.S.C. § 102(f).  Howmedica's motion for

summary judgment that the 1978 HSS Implant is prior art under 35 U.S.C. § 102(f) is denied.

### 6.  Prior Art Under 35 U.S.C. § 102(g)

Zimmer also moved for summary judgment that the 1978 HSS Implant is not prior art

under 35 U.S.C. § 102(g).  Zimmer argues that the HSS #1023 was abandoned after the June

1978 surgery.  Zimmer's Memo in Support [DE 401] at 15.  Specifically, Zimmer contends that

"(1) documents relating to the HSS #1023 were concealed and protected by doctor-patient

confidentiality, (2) there was no effort to make the HSS #1023 public, and (3) Dr. Burstein did

not apply for a patent for the HSS #1023."  *Id*. (citing Burstein Dep. at 216).  Zimmer further

asserts that, even though Dr. Burstein was the engineer designer for the IB-II, the features of the

1978 HSS Implant were not made public there either.  *Id*. (citing Burstein Dep. at 94-95).

Howmedica, however, asserts that the 1978 HSS Implant was "used in public – i.e.,

implanted into a patient without restrictions on the implant's design information – shortly after

it was created."  Howmedica's Opposition [DE 429] at 17 (citations omitted).  According to

Howmedica, the 1978 HSS Implant design information was not concealed but was freely

accessible; Howmedica asserts that only the patient's name was confidential.  *Id*. at 18.  Finally,

Howmedica argues that there is no requirement that the 1978 HSS Implant be patented to avoid

"abandonment."  *Id.* (citing *Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761-

63 (Fed. Cir. 1995)).

Section 102(g) provides that "[a] person shall be entitled to a patent unless . . . before the

applicant's invention thereof the invention was made in this country by another who had not

abandoned, suppressed or concealed it." 35 U.S.C. § 102(g). Therefore, "if a patentee's invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention, § 102(g) will invalidate that patent." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001). The "failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment." *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001) (internal citations omitted). In order to avoid a finding that a prior invention was abandoned, suppressed, or concealed under § 102(g), the prior inventor must take affirmative steps to make the invention publicly known.

In this case, there is no dispute that Dr. Burstein did not file a patent application for the HSS #1023. Rather, the disputes here center around whether the HSS #1023 was used publicly, described in a published document, or constituted a printed publication. As discussed earlier in this order, the Court finds that there are genuine issues of material fact as to whether the 1978 HSS Implant was used, publicly available, or a printed publication. These questions make it impossible for the Court to decide this issue on a motion for summary judgment. Accordingly, the Court denies Zimmer's motion for summary judgment that the 1978 HSS Implant is not prior art under 35 U.S.C. § 102(g). The Court also denies Howmedica's motion for summary judgment as it relates to 35 U.S.C. § 102(g).

### 7. Prior Art Under 35 U.S.C. §§ 102(c), (d), or (e)

Howmedica is not asserting any defense related to the 1978 HSS Implant under 35 U.S.C. §§ 102(c), (d), or (e). As such, Zimmer contends it is entitled to summary judgment on

28

those issues.  In *CIVIX-DDI, LLC v. Cellco P'ship*, 387 F.Supp.2d 869, 881 (N.D. Ill. 2005), the

court held that it is improper for a court to grant summary judgment on an issue that a party is

no longer asserting because, to do so, would result in an improper advisory opinion.  Because

Howmedica is not asserting any defenses under these provisions, granting summary judgment in

favor of Zimmer would be inappropriate; ruling on non-asserted defenses would merely be an

academic exercise resulting in a wholly advisory opinion.  Thus, that no asserted claim of the

'313 patent is invalid for failure to comply with 35 U.S.C. §§ 102(c), 102(d), or 102(e) is moot.

### *The Greenwald patent, the Fabian patent, and the IB-II knee system*

Howmedica contends that the Greenwald patent, the Fabian patent, and the IB-II knee

system constitute prior art to the '313 patent because they were "patented or described in a

printed publication in this or a foreign country," or "on sale in this country," more than one year

prior to the date the patentee filed his application.  *See* 35 U.S.C. § 102(b).  Howmedica asserts

that the Greenwald patent issued on August 15, 1978, "many years before the one year bar date,"

the Fabian patent issued on June 26, 1990, "more than one year before the November 23, 1992

filing date of the '313 patent," and the IB-II knee system was "both described in printed

publications and on sale well before the '313 patent's bar date."  Howmedica's Memo in

Support [DE 373] at 17.  Zimmer provided no response to Howmedica's assertions regarding

the Greenwald and Fabian patents or the IB-II, and, as such, the parties do not dispute that the

Greenwald patent, the Fabian patent, and the IB-II constitute prior art to the '313 patent.

Accordingly, the Court grants Howmedica's motion for summary judgment insofar as it seeks a

finding that the Greenwald patent, the Fabian patent, and the IB-II knee system constitute prior

art to the '313 patent.

29

Obviousness

Because the Court has found that there exist genuine issues of material fact regarding whether the 1978 HSS Implant is prior art, and because a reference cannot be considered in an obviousness determination unless it is prior art, the Court need not continue in its analysis of whether the 1978 HSS Implant renders the '313 patent obvious.  However, the Court must address Howmedica's assertion that good reasons existed to combine the Greenwald patent with the Fabian patent.

In its current motion for summary judgment, Howmedica concedes that it previously moved for summary judgment based on the combination of the Fabian patent and the Greenwald patent.  *See* Howmedica's Memo in Support [DE 373] at 12, n. 4.  Howmedica stated, "[t]he Court denied this prior motion, finding a genuinely disputed material fact as to whether one of ordinary skill in the art would have been motivated to combine the Fabian patent with the Greenwald patent."  *Id*. (citing DE 338) (emphasis omitted).  Howmedica contends that since that ruling, the Supreme Court's decision in *KSR* "eliminated this 'motivation to combine' as a required test, thus erasing this Court's only reason for denying summary judgment."  *Id.* (citing *KSR*, 127 S.Ct. at 1727) (emphasis omitted).  Howmedica is incorrect.

In *KSR*, the Supreme Court clarified the standard for determining when a patent that claims a combination of elements of prior art is obvious and invalid under 35 U.S.C. § 103.  Specifically, the *KSR* opinion focused on the Federal Circuit's strict use of the "teaching, suggestion, or motivation" ("TSM") test.  The teaching, suggestion, or motivation test as stated prior to *KSR* provided that a patent claim would be obvious only when "some motivation or suggestion to combine the teachings" of the prior art can be found in the prior art, the nature of

30

the problem, or the knowledge of a person having ordinary skill in the art.  *Al-Site Corp. v. VSI Int'l Inc*., 174 F.3d 1308, 1323-1324 (Fed. Cir. 1999).  In *KSR*, the Supreme Court held that the TSM test, when properly applied – in a non-rigid and non-mandatory fashion – is consistent with the framework for determining obviousness under Section 103.  *KSR*, 127 S.Ct. at 1741.  *See also DyStar*, 464 F.3d at 1356 (stating that the TSM test is flexible and "not only permits, but requires, consideration of common knowledge and common sense.").

Howmedica also incorrectly asserts that the Court's only reason for denying Howmedica's prior motion for summary judgment was based on motivation to combine.  The Court found that there were material questions of fact as to: (1) whether the Greenwald and Fabian patents teach away from their combination and (2) whether there exists a motivation to combine the resources to obtain the '313 patent.  *Zimmer v. Howmedica*, 453 F.Supp.2d 1030, 1048 (N.D. Ind. 2006).  The Court also found that "the Fabian patent does not disclose a longitudinally offset stem extension for insertion into a bone . . . [and that] there is a genuine issue of material fact as to whether the Greenwald patent asserts this missing element."  *Id*. at 1048.  The Court also noted that secondary considerations of nonobviousness must be considered before a conclusion on obviousness may be reached.  *Id.* at 1050.  (citing *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc*., 776 F.2d 281, 306 (Fed. Cir. 1985).  The Court stated, "Howmedica has failed to establish a *prima facie* case of invalidity of the '313 patent based on obviousness . . . Even so, there are questions of fact on the weight to be given to each of these secondary considerations of nonovbiousness."  *Zimmer*, 453 F.Supp.2d at 1051. The Court also held that evidence of secondary considerations and evidence that the combination did not disclose all of the elements of the '313 patent precluded summary judgment.

Howmedica next asserts that "it is black letter patent law that an invalid patent is not brought back to life even when there is 'substantial evidence' of secondary considerations." Howmedica's Reply [DE 433] at 1 (emphasis omitted) (citing *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61 (1969). However, precedent dictates that district courts must make *Graham* findings before invalidating a patent for obviousness; the fourth *Graham* factor involves an examination of secondary considerations. *Ruiz*, 234 F3d at 663-64. Importantly, the Federal Circuit has stated, "[e]vidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.3d 1530, 1538 (Fed. Cir. 1983). The Federal Circuit has also stated that evidence of secondary considerations of nonobviousness "may be sufficient to overcome a *prima facie* case of obviousness." *In re Beattie*, 974 F.2d 1309, 1313 (Fed. Cir. 1992). And the Supreme Court in *KSR* did not overrule the principle that "'[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.'" *KSR*, 127 S.Ct. at 1730 (quoting *Graham*, 383 U.S. at 17-18).

Based on the foregoing, the Court finds that it already addressed the issue of whether the '313 patent is invalid for obviousness based on a combination of the Greenwald Patent with the Fabian Patent. Moreover, the Court's prior analysis is not in conflict with the recent decision in *KSR*. The Court's ruling is the law of the case and will not be disturbed at this stage of the litigation. *See Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). Accordingly, because the law of the case precludes summary judgment on all of Howmedica's proposed

combinations, this Court need not proceed further in the obviousness analysis. Howmedica's motion for summary judgment that the '313 patent is invalid for obviousness is denied.

### 3. Noninfringement

Howmedica also seeks summary judgment of noninfringement as to claims 5, 7, 10-12, and 15 of the '313 patent on the basis that Zimmer is not asserting those claims. Howmedica's Memo in Support [DE 373] at 25. Howmedica contends that Zimmer's complaint did not allege infringement based on only some of the claims, but rather all claims of the '313 patent; Howmedica asserts that because Zimmer has not provided evidence to support its complaint, summary judgment is appropriate. Howmedica's Reply [DE 433] at 15.

Again, the Court notes that it addressed this issue in a previous round of summary judgment motions. The Court previously held:

> Howmedica asserted that it was entitled to summary judgment of noninfringement of asserted claims 5, 7, 10-12, and 15 of the '313 patent but never addressed this issue in its briefs and failed to support their arguments in any way. Therefore summary judgment on this issue in Docket No. 217 should be denied.

*Zimmer*, 453 F.Supp.2d at 1051, n. 15 (citing FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 322-23.

*See also Zimmer*, 453 F.Supp.2d at 1057 (specifically denying Howmedica's motion for summary judgment of non-infringement of unasserted claims 5, 7, 10-12, and 15 of the '313 patent). Consequently, this ruling constitutes the law of the case and will not be readdressed by the Court. Howmedica's motion for summary judgment of noninfringement as to claims 5, 7, 10-12, and 15 of the '313 patent is denied.

### 4. Anticipation

Zimmer argues that, even if the 1978 HSS Implant is prior art, Zimmer is entitled to

summary judgment that no asserted claim of the '313 patent is anticipated because the 1978 HSS Implant does not contain all limitations of the '313 patent claims.  Zimmer's Memo in Support [DE 401] at 19.  To support its anticipation defense, Howmedica must prove by clear and convincing evidence that the design of the 1978 HSS Implant discloses each and every element of the claims of Zimmer's patent.  Zimmer claims that the 1978 HSS Implant is a very different design and does not disclose each element of Zimmer's patent claims.

Zimmer argues that the 1978 HSS Implant cannot anticipate claims 1-17 because the 1978 HSS Implant is not modular.  Claim 1 of the '313 patent claims a "modular prosthesis system."  The Federal Circuit construed the term "modular" to mean "standardized." *Zimmer v. Howmedica*, 111 Fed. Appx. 593, 599 (Fed. Cir. 2004).  This Court stated that the Federal Circuit's holding that "the term 'modular prosthesis system' . . . means a standardized prosthesis system which does not require a one-piece stem extension" is the law of the case.  *Zimmer v. Howmedica*, 397 F.Supp.2d 974, 983 (N.D. Ind. 2005).  The issue then is whether the 1978 HSS Implant is standardized and part of a standardized prosthesis system.

Zimmer contends that the 1978 HSS Implant was a custom implant that was specifically machined for a particular patient.  Zimmer admits that the 1978 HSS Implant was made from a Codman "blank," which Howmedica terms a standardized component.  But Zimmer contends that the 1978 HSS Implant cannot be modular because the standardized Codman component from which it was built was modified to include what Howmedica terms an offset stem. Zimmer asserts that "a custom implant is the antithesis of standardized."  Zimmer's Memo in Support [DE 401] at 21.  Zimmer further asserted that "even the Codman casting was not an off-the-shelf, standardized component – it was uniquely numbered and made by Codman for HSS

34

because the piece was still in its 'development[al] phase.'" *Id*. (quoting Burstein Dep. 58-59,

65). Zimmer stated that the Codman castings were in "semifinished" form and required further

cutting before they were ready for implantation. *Id*. (citations omitted). Moreover, according to

Zimmer, "Dr. Burstein admitted that all of the implants were custom. *Id*. (citations and

quotations omitted). Finally, Zimmer asserts that Howmedica's "purported evidence supporting

that the 1978 HSS implant was a 'modular prosthesis system' boils down to the conclusion of

its expert Dr. Laskin." *Id*. Zimmer contends that "conclusory statements of counsel or a

witness that a patent is invalid do not raise a genuine issue of fact." *Id*. (quoting *Biotec*

*Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed.

Cir. 2001) (citations omitted).

   In turn, Howmedica asserts that it does not rely just on Dr. Laskin's conclusory

statements, but rather that Dr. Laskin cites to ample evidence including the 1978 HSS Implant-

related documents, Dr. Burstein's declaration and sworn deposition testimony, and brochures of

the Total Condylar system. Howmedica's Opposition [DE 429] at 21. Howmedica contends that

modifying the modular Codman component does not erase where it came from. Howmedica's

Opposition [DE 429] at 20. Howmedica argues that "[b]y knowing that the 1978 HSS came

from a 'standardized' system, a person of ordinary skill in the art would have necessarily known

about 'standardized' prosthesis systems." *Id*. at 20-21. Moreover, Howmedica contends that

the fact that the 1978 HSS Implant was assembled using a shrink-fit connection method does

not keep it from being a "standardized prosthesis system." Rather, Howmedica contends that a

shrink-fit is merely a method of attaching an interference connection. *Id*. at 21.

   The Court finds that Howmedica has failed to present evidence showing that the 1978

HSS Implant was "standardized."  The evidence demonstrates that the Codman casting was not standard, but rather was uniquely numbered and made.  The Codman blank was then modified, on an individual basis.  Thus, the evidence establishes that the end product – the 1978 HSS Implant – is not a standardized product, but rather is a custom product.  Howmedica's evidence to the contrary consists of conclusory statements by witnesses and is, on that basis, insufficient to defeat Zimmer's motion for summary judgment.  Thus, the Court grants Zimmer's motion for summary judgment insofar as it seeks a ruling that the 1978 HSS Implant cannot anticipate claims 1-17 because the 1978 HSS Implant is not modular.

Zimmer also claims that the 1978 HSS Implant cannot anticipate claims 2 or 3 of the '313 patent because the 1978 HSS Implant is not "radially adjustable."  Claim 2 of the '313 patent requires that the stem extension be "radially adjustable."  Claim 2 claims "[t]he system of claim 1 wherein the stem mounting means is radially adjustable in cooperation with the base mounting means so that the second axis of the elongated stem portion can be oriented in any one of a plurality of radial orientations with respect to the first axis."  '313 patent.  According to Zimmer, the "undisputed facts establish that the 1978 HSS implant was not 'radially adjustable' because the stem piece and the articular piece were attached using a shrink-fit connection. . . . A shrink-fit connection is not radially adjustable once assembled and is not radially adjustable during surgery."  Zimmer's Memo in Support [DE 401] at 23.  Zimmer relied on Dr. Burstein's deposition testimony in which he admitted that he was not aware of anyone radially adjusting a shrink-fit connection during surgery.  *Id.* (citing Burstein Dep. 88-89).  Zimmer also cited Mr. Korzenietz's testimony that shrink-fit connections occur in the place of a permanent weld connections and a surgeon could not adjust shrink fit connections in the operating room.  *Id.*

(citing Korzenietz Dep. 59-60).  Moreover, Zimmer asserted that Dr. Crowninshield attempted to adjust a shrink-fit connection built to the specifications of the 1978 HSS Implant but was unable to do so.  *Id.* (citing Crowninshield Report at 11).  Finally, Zimmer stated that "shrink fits are not identical to Morse tapers, as even Dr. Burstein conceded when he testified that at HSS '[i]f it was our design and it was intended to be assembled in the operating room, we would have used a taper rather than a shrink fit,' and that the assembly of a shrink-fit connection would happen 'in the laboratory, but not in the OR.'" *Id.* (quoting Burstein Dep. 80-81, 86-87).

Howmedica asserts that even though claim 2 of the '313 patent does not require that the system be "radially adjustable" during surgery, "it makes no difference because the 1978 HSS implant is radially adjustable before and during surgery."  Howmedica's Opposition [DE 429] at 22.  Howmedica argues that the 1978 HSS Implant satisfies this limitation because it used a symmetrical pin-and-recess connection that was "radially adjustable" in the identical manner as the Morse taper disclosed in the '313 patent.  According to Howmedica, "Dr. Burstein – the person who designed the 1978 HSS Implant – testified that the connection of the 1978 HSS Implant was essentially the same as a Morse taper, with the only difference being that the components were cylindrical in shape rather than tapered.  A surgeon could have impacted the 1978 HSS implant's components together and radially adjusted them, just as with a Morse taper."  Howmedica's Opposition [DE 429] at 22 (citations omitted).  Howmedica also argues that even though the 1978 HSS Implant employs a shrink-fit connection, "Dr. Burstein stated that he expressly designed the 1978 HSS implant to allow for rotational adjustability."  *Id.* (citations and emphasis omitted).  Howmedica also relied on Dr. Burstein's assertion that the rotational orientation of the stem pieces could be adjusted during surgery using a wrench.

Here, the uncontraverted evidence establishes that the 1978 HSS Implant's shrink-fit connection was not radially adjustable during surgery. The expert testimony in this case establishes that there is no knowledge of anyone radially adjusting a shrink-fit connection during surgery and that shrink-fit connections could not be adjusted in the operating room. Howmedica has not met its burden on this issue. The Court grants Zimmer's motion for summary judgment insofar as it seeks a ruling that the 1978 HSS Implant cannot anticipate claims 2 or 3 of the '313 patent because the 1978 HSS Implant is not "radially adjustable."

Zimmer also claims that the 1978 HSS Implant cannot anticipate claim 3 of the '313 patent because the 1978 HSS Implant is not "releasably fixed." Zimmer argues that the 1978 HSS Implant is not "releasably fixed" for at least two reasons: (1) once the two parts are connected with a shrink fit connection, they cannot be separated without damaging the parts and (2) even if one could get the pieces apart without damage, one could not pound them back together at room temperature without damage. Zimmer's Memo in Support [DE 401] at 24 (citing Rand Report at 27-28; Crowninshield Report at 8; Korzenietz Dep 66-67). Moreover, Zimmer asserts that even though Dr. Burstein stated that one may be able to assemble the pieces using a hammer, there is no evidence this would work. *Id*. (citing Burstein Dep. 82). Moreover, Zimmer asserts that Howmedica presented no evidence of anybody ever impacting a shrink fit connection with a hammer. *Id*. at 25. To support its contentions, Zimmer relied on Dr. Crowninshield's statements that "as the pieces engage together, a greater and greater force is required to achieve displacement," "there is no way of knowing when the male portion [is] fully seated in the female portion," and "it is very difficult to get the pieces to properly align." *Id*. at 24-25 (quoting Crowninshield Report at 9). Instead, Zimmer asserts that Howmedica's only

evidence that the 1978 HSS Implant was "releasably fixed" is Dr. Laskin's "bare opinion that the 1978 HSS implant 'utilized a symmetrical pin-and-recess connection that was releasably fixed in a manner similar as the Morse taper disclosed in the '313 patent' paired with reliance on Dr. Burstein's speculation." *Id*. at 25 (quoting Laskin Report at 88; Laskin Reply Report to Rand at 109; Laskin Reply Report to Crowninshield at 44-45).

Howmedica argues that the 1978 HSS Implant teaches "releasably fixed" because it had a symmetrical pin-and-recess connection that was releasably fixed similar to the Morse taper disclosed in the '313 patent.  Howmedica's Opposition [DE 429] at 23.  Moreover, according to Howmedica, claim 3 of the '313 patent does not require that the connection be easy to release – only that it be "releasably fixed." *Id*.  Howmedica asserts that Mr. Korzenietz did not state that the 1978 HSS Implant could not be taken apart but rather merely stated that it would be difficult to disassemble because it is an interference connection. *Id*.  Howmedica further contends that the fact that it is difficult to disassemble an interference fit is also true of a Morse taper, which according to Howmedica is also an interference fit. *Id*.  Howmedica asserts that the "possibility of damage during component separation applies equally to the 1978 HSS implant, and any other system with Morse-taper connected parts." *Id*.  Finally, Howmedica contends that Morse tapers and interference connections like that of the 1978 HSS Implant are capable of being "releasably fixed"; Howmedica asserts that Dr. Burstein confirmed, and Dr. Laskin agrees, that the 1978 HSS Implant was releasably fixed. *Id*. at 24 (citing Burstein Dep. Tr. at 116).

Claim 3 "requires that the connection be releasable during surgery." *Zimmer v. Howmedica*, 111 Fed. Appx. at 601.  See also '313 patent specification (stating that when mounting the base portion to the stem extension, "[t]he surgeon would select the desired

position for axis 'B' relative to the base portion 10, and then the stem extension 1 can be releasably fixed to the base portion 10 in the selected orientation.").  The Federal Circuit stated, "the connection must be releasable after the surgeon has selected the desired position for the stem extension axis, which occurs during surgery." *Id*.  As noted in an earlier Order, this construction is now a part of the law of the case. *Zimmer*, 397 F.Supp.2d at 988.  The Court finds there are no genuine issues of material fact that the 1978 HSS Implant was not  "releasably fixed."  Rather, the evidence establishes that the shrink-fit connection of the 1978 HSS Implant would be very difficult to disassemble during surgery and that the damage to the parts that would occur would render the implant unsuitable for implantation into a patient.  Conclusory opinions to the contrary alone cannot create a genuine issue of material fact.  As such Zimmer's motion for summary judgment is granted insofar as it seeks a ruling that the 1978 HSS Implant cannot anticipate claim 3 of the '313 patent because the 1978 HSS Implant is not "releasably fixed

Because the Court has found that Zimmer is entitled to summary judgment that the 1978 HSS Implant is not modular, is not "radially adjustable," and is not "releasably fixed," the Court grants Zimmer's motion for summary judgment to the extent that it seeks a ruling that no asserted claim of the '313 patent is anticipated because the 1978 HSS Implant does not contain all limitations of the '313 patent claims.

C.  Howmedica's Motion for Summary Judgment of No Willful Infringement [DE 388]

Howmedica also filed a  motion for summary judgment, asserting that it is entitled to summary judgment of no willful infringement of the '313 patent.  Howmedica argues that under the Federal Circuit's opinions in *KSR*, 127 S.Ct. at 1727 and *In re Seagate Technology, LLC*,

497 F.3d 1360, 1371 (Fed. Cir. 2007) *(en banc)*, Zimmer cannot show that Howmedica has

willfully infringed the '313 patent.  According to Howmedica, *Seagate* requires proof of

"objective recklessness" which must be evidenced by a threshold showing of an objectively high

likelihood of infringement.  *See Seagate,* 497 F.3d at 1371.  Howmedica claims there is no

evidence in this case that Howmedica has acted in an objectively reckless manner or knew of an

objectively high likelihood of infringement.[5]   Howmedica further asserts that this Court

previously granted summary judgment of noninfringement in favor of Howmedica and denied

Zimmer's motion for summary judgment on the issue of infringement, which was then reversed

on appeal.  Howmedica argues that this ruling is law of the case and that on these genuinely

disputed facts, there can be no finding that Howmedica's decision to commercialize its accused

products was objectively reckless.  Finally, Howmedica argues that the very fact that liability is

hotly contested is evidence that there is not – and never has been – a high likelihood of

infringement.

　　　Zimmer argues that Howmedica is incorrect in its assertion that so long as a court finds

genuine issues of material fact on any question related to infringement, a patentee cannot

establish willful infringement as a matter of law.  Zimmer pointed to *VNUS Medical*

*Technologies, Inc. v. Diomed Holdings, Inc.,* 2007 WL 3165548 (N.D.Cal. Oct. 24, 2007),

where the court, despite the fact that Diomed had obtained opinions of counsel, denied its

---

[5]Howmedica maintains that there can be no infringement of the '313 patent because
Howmedica's accused products use threads to connect its various system components, while the
'313 patent claims devices that use a very different mechanism – the Morse taper – to connect its
various system components.  According to Howmedica, because the accused products use a
connection structure that is different from and not equivalent to the claimed Morse taper
connection structure, there can be no infringement.

motion for summary judgment of no willful infringement based on evidence of pre-filing reckless acts. The Court also rejected Diomed's argument that because the plaintiff did not seek summary judgment on Diomed's claims of invalidity, there can be no willful infringement as a matter of law. Zimmer further argues that the *Seagate* decision did not limit findings of willful infringement to cases where a patentee is able to secure summary judgment of infringement. Zimmer agrees that, under *Seagate*, it must show that Howmedica acted with "objective recklessness." Zimmer contends, however, that its evidence of Howmedica's objectively reckless behavior is grounded in Howmedica's prelitigation conduct and precludes summary judgment. Zimmer claims that its evidence shows (1) Howmedica's lawyers and design staff were aware of Zimmer's patent and that there was a high likelihood of infringement; (2) Howmedica's development documents state that it was concerned with possible infringement of the '313 patent; (3) Howmedica failed to follow its own internal policy regarding new product clearance and, based upon standards of commerce, it is objectively reckless for a company to have a policy for addressing potential infringement and not follow it; (4) Howmedica attempted to conceal its development and design activities and failure to maintain proper documentation (or destroying it) is objectively reckless behavior; (5) Howmedica relies on opinions of counsel that present incorrect and inadequate legal analysis, and reliance on such opinions is objectively reckless; (6) the outside opinions of counsel obtained by Howmedica indicate that the initial proposed design did infringe certain claims of the '313 patent; and (7) Howmedica did not obtain an opinion addressing infringement by the accused products until after it started selling the products, and only then by in-house counsel.

　　　　To establish willful infringement, a patentee must prove "the infringer acted despite an

objectively high likelihood that its actions constituted infringement of a valid patent" and such objective risk "was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371.  The Court left further development of the application of the willfulness standard to future cases.  *Id*.  Willfulness is a question of fact, and a finding of willfulness requires a showing of objective recklessness by presentation of clear and convincing evidence.  *Id*.  *See also Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1221 (Fed. Cir. 1995). Ordinarily, "willfulness will depend on an infringer's prelitigation conduct."  *Seagate*, 497 F.3d at 1360.

The fact that this Court previously granted Howmedica's motion for summary judgment, and the fact that the Federal Circuit held that there were material issues of fact in remanding the case, does not provide a legal bar to a finding of willful infringement.  In this case, the Federal Circuit reversed and remanded, finding that there existed genuine issues of material fact which precluded the entry of summary judgment; specifically, the Federal Circuit ruled that there were genuinely disputed questions of fact regarding whether the '313 patent's Morse taper structure was or was not equivalent to the threaded connection used by Howmedica.  Importantly, however, the Federal Circuit's reversal was not based solely on this Court's grant of summary judgment of non-infringement.  Rather, the Federal Circuit stated that this Court "erroneously construed all of the asserted claims simultaneously . . . improperly imported limitations from the written description into the claims . . . [and] did not consider whether any of the claim limitations at issue are means plus functions limitations."  *Zimmer*, 111 Fed. Appx. at 598. Moreover, it is well-established that the summary judgment standard in patent cases when determining infringement is a two step process: (1) the court must properly construe the scope

and meaning of the asserted claims and (2) the court must them compare the properly construed claims with the accused device or product to reach a finding regarding infringement. *Johnson Worldwide Assoc. Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). Thus, because this Court's original finding of noninfringement was based on an improper claim construction, its finding of noninfringement holds no weight in the current analysis.

Moreover, there is substantial evidence that would support the conclusion that Howmedica's pre-filing conduct demonstrates that Howmedica acted despite an objectively high likelihood that its actions constituted infringement and that this objectively defined risk was known to Howmedica. In sum, there is ample evidence upon which a reasonable juror could base the conclusion that there existed an objectively high likelihood of infringement. Howmedica' motion for summary judgment of no willful infringement of the '313 patent is therefore denied.

### VI. Conclusion

Zimmer and Howmedica have presented several issues to the Court in the form of three motions for summary judgment and a motion to strike; each motion has been discussed in depth above.

In its Motion for Summary Judgment [DE 372], Howmedica asserted that it is entitled to summary judgment of invalidity under 35 U.S.C. § 103 as to the asserted claims of the '313 patent (i.e., claims 1-4, 6, 8-9, 13-14, and 16-17). Howmedica also asserted that it is entitled to summary judgment that the 1978 HSS Implant, the Greenwald Patent, the Fabian Patent, and the IB-II knee system constitute prior art to the '313 patent. Based on the foregoing, Howmedica's Motion for Summary Judgment [DE 372] is **GRANTED IN PART and DENIED IN PART**.

Specifically, the Court denies Howmedica's motion for summary judgment insofar as it seeks rulings that the 1978 HSS Implant is "known" prior art under 35 U.S.C. § 102(a), "used"prior art under 35 U.S.C. § 102(a) or prior art under the "public use" provision of section 102(b), constitutes prior art under the "on-sale" bar of section 102(b), a prior art "printed publication" under 35 U.S.C. §§ 102(a) and (b), prior art under 35 U.S.C. § 102(f) and 102(g).  Because the Court finds that there are genuine issues of material fact regarding whether the 1978 HSS Implant is prior art, the Court cannot continue in its analysis of whether the 1978 HSS Implant renders the '313 patent obvious.  As such, Howmedica's motion for summary judgment of invalidity due to obviousness is denied.    The Court notes that it has already addressed the issue of whether the '313 patent is invalid for obviousness based on a combination of the Greenwald patent with the Fabian patent and further finds that the Court's prior analysis of this issue is not in conflict with the recent decision in *KSR*.  Accordingly, the Court declines to revisit that issue in this Order.  Howmedica's motion is also denied insofar as it seeks summary judgment of noninfringement as to claims 5, 7, 10-12, and 15 of the '313 patent on the basis that Zimmer is not asserting those claims.  The Court previously addressed this issue and will not revisit it here.  Howmedica's motion for summary judgment is granted only insofar as it seeks a ruling that the Greenwald patent, the Fabian patent, and the IB-II knee system constitute prior art to the '313 patent.

Howmedica also filed a Motion for Summary Judgment of No Willful Infringement [DE 388] asserting that it is entitled to summary judgment of no willful infringement of the '313 patent.  Because there exist questions of fact regarding whether there existed an objectively high likelihood of infringement, Howmedica's Motion for Summary Judgment of No Willful

45

Infringement is **DENIED**.

For the reasons set forth in more detail above, Zimmer's Motion for Partial Summary Judgment [DE 400] is **GRANTED IN PART and DENIED IN PART**.  Due to the reopening of discovery and because there is no self-contradiction in Howmedica's positions, the Court finds that the doctrines of judicial estoppel and waiver do not apply in this case.  As such, the Court denies Zimmer's Motion for Partial Summary judgment to the extent it seeks a ruling that Howmedica is precluded from asserting that the 1978 HSS Implant or any other reference is prior art under 35 U.S.C. § 102(f) and 102(g).  Zimmer's motion is granted to the extent it seeks rulings that the 1978 HSS Implant does not constitute "known" prior art under 35 U.S.C. § 102(a), the 1978 HSS Implant is not a prior art "printed publication" under 35 U.S.C. § 102(a) and § 102(b), the 1978 HSS Implant is not prior art under 35 U.S.C. § 102(f).  The Court also finds that Zimmer is entitled to summary judgment that the 1978 HSS Implant is not modular, is not "radially adjustable," and is not "releasably fixed."  Accordingly, Zimmer's motion is granted to the extent that it seeks a ruling that no asserted claim of the '313 patent is anticipated because the 1978 HSS Implant does not contain all limitations of the '313 patent claims.  Zimmer's motion is denied to the extent it seeks ruling that the 1978 HSS Implant does not constitute "used" prior art under 35 U.S.C. § 102(a) or prior art under the "public use" provision of section 102(b), the 1978 HSS Implant does not constitute prior art under the "on-sale" bar in 35 U.S.C. § 102(b), the 1978 HSS Implant is not prior art under 35 U.S.C. § 102(g).  Because Howmedica is not asserting any defenses under those provisions, Zimmer's claim that no asserted claim of the '313 patent is invalid for failure to comply with 35 U.S.C. §§ 102(c), (d), or (e) is moot.

In its Motion to Strike [DE 440], Zimmer requested that the Court strike opinion testimony from Dr. Burstein along with the portions of Howmedica's response to Zimmer's Motion for Partial Summary Judgment which cite and rely upon that testimony.  Because the Court finds that Dr. Burstein is a fact witness – and not an expert witness – who can properly testify with regard to the 1978 HSS and 1987 HSS Implants, Zimmer's Motion to Strike [DE 440] is **DENIED**.

**SO ORDERED on January 4, 2008.**

    **s/ William C. Lee**
**WILLIAM C. LEE, JUDGE**
**UNITED STATES DISTRICT COURT**