UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ZIMMER TECHNOLOGY, INC. and ZIMMER, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL NO. 3:02cv425 ) |
| HOWMEDICA OSTEONICS CORP., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on a motion to strike the expert report and exclude expert testimony of proffered expert Albert H. Burstein, Ph.D., filed by the plaintiffs, Zimmer Technology, Inc. and Zimmer, Inc. (collectively referred to as "Zimmer"), on June 12, 2008. The defendant, Howmedica Osteonics Corp. ("Howmedica"), filed its response on June 30, 2008, to which Zimmer replied on July 14, 2008. Howmedica filed a sur-reply on July 15, 2008.

For the following reasons the motion to strike will be denied.

## Discussion

On January 9, 2008, Howmedica informed the Court that Dr. Richard S. Laskin, one of its liability experts, had terminal cancer and could not testify at trial. (D. 471, March 14, 2008 Order at 1.) On March 14, 2008, the Court entered an order stating:

> The Court is also convinced that there is a possibility that two experts may be necessary to replace Dr. Laskin. *See Magnolia Marine Transp. v. Frye*, 875 F. Supp. 1216, 1223 (D.La. 1994). The Court encourages Howmedica to find one replacement expert. If that is not possible, however, the Court limits Howmedica to two replacement experts and limits the scope of any new expert reports to the scope of Dr. Laskin's prior reports.

(*Id.* at 2-4.) On May 23, 2008, Howmedica served Zimmer with almost five hundred pages of new expert reports from two replacement experts: Dr. Leo A. Whiteside and Dr. Albert H.

Burstein. Zimmer claims that Dr. Whiteside wholly replaces Dr. Laskin in that his qualifications match or exceed those of Dr. Laskin in all relevant respects and he proffers every opinion that Dr. Laskin proffered. Thus, Zimmer objects that Howmedica's submission of Dr. Burstein's report violates the Court's order.

Zimmer reminds the court that Dr. Burstein's proffered report is not his first involvement in this case. Burstein submitted a declaration on June 1, 2007 and was deposed on July 13, 2007. Although Howmedica attempted to have Dr. Burstein offer expert opinions in his declaration and deposition, he was never disclosed as an expert and provided no expert report at that time. Zimmer contended that a portion of Dr. Laskin's report consisted of Dr. Laskin parroting the undisclosed "expert opinions" of Dr. Burstein. Accordingly, the Court restricted Dr. Burstein to fact testimony (D. 457, January 4, 2008 Order at 9) and excluded any opinions offered by Dr. Laskin that were based solely on Dr. Burstein's improper opinions (D. 455, January 2, 2008 Order at 16). In its present motion, Zimmer contends that Dr. Burstein's report is not necessary to replace Dr. Laskin's and is an attempted end-run around the rulings limiting Dr. Burstein to fact testimony.

Rule 16(f) permits the Court to strike export reports and exclude testimony in violation of a court order. *See e.g., In re Maurice*, 21 F.3d 767, 773 (7th Cir. 1994) (excluding expert testimony disclosed after the court ordered deadline); *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996) (upholding sanctions under 16(f) for failure to comply with court ordered accounting requirements). The Court's conditional allowance of a second expert resulted from Howmedica's representation that Dr. Laskin had "extensive qualifications" as both an orthopedic surgeon and an implant designer. (*Id*. at 3) Howmedica argued that it may have to

2

replace Dr. Laskin with "separate orthopedic surgeon and engineering experts" due to Dr. Laskin's unique qualifications as a surgeon and designer. (D. 470, February 18, 2008 Howmedica's Reply in Support of Its Mot. for an Order Setting Expert Disc. Deadlines at 4.) According to Zimmer, Dr. Whiteside, who is a surgeon and implant designer, meets or exceeds Dr. Laskin's relevant qualifications. Zimmer has provided the following comparison chart:

| Dr. Richard S. Laskin | Dr. Leo A. Whiteside |
|---|---|
| Practicing orthopedic surgeon | Practicing orthopedic surgeon |
| Licensed in New York | Licensed in Texas and Missouri |
| Certified by the American Board of Orthopaedic Surgery | Certified by the American Board of Orthopaedic Surgery |
| Professor at Weill Medical College at Cornell University | Assistant Professor at Washington University and Clinical Professor at St. Louis University |
| Conducts primary and revision knee replacements, of which 15% are revisions | Conducts primary and revision knee replacements, of which 25% are revisions |
| Works on design and development of knee prostheses | Works on design and development of knee prostheses, including 23 patents on orthopedic implants and related technology |
| Authored over 100 articles and authored or edited several textbooks | Authored over 150 articles, a book, and several book chapters |
| Member of several professional societies, including the Knee Society, the Association of Bone and Joint Surgeons, the American Orthopaedic Association, and the Orthopaedic Research Society | Member of several professional societies, including the Knee Society, the Association of Bone and Joint Surgeons, the American Academy of Orthopedic Surgeons, and the Clinical Orthopaedic Society |
| Personally familiar with the at-issue products | Personally familiar with the at-issue products |

Zimmer points out that Dr. Burstein agrees that "[Dr. Whiteside] will be providing expert opinions on invalidity from the perspective of a surgeon and implant designer." (Burstein

3

Invalidity Report at 2). Zimmer further argues that the similarities do not end with qualifications and claims that Dr. Whiteside's reports cover the entire scope of issues covered by Dr. Laskin and offer opinions on every subject offered by Dr. Laskin.

> I found that my invalidity opinions are entirely consistent with Dr. Laskin's. I therefore adopt Dr. Laskin's invalidity opinions and discussion of the prior art as my own, and incorporate his invalidity analysis and opinions in their entirety as if they were my own.

(Whiteside Invalidity Report at 2.) Thus, Zimmer contends that there is no instance where Dr. Whiteside lacks qualifications that Dr. Laskin had to render his expert opinions.

Zimmer further argues that Dr. Burstein, in contrast, is a designer, but not a surgeon. (Burstein Invalidity Report at 4.) Zimmer contends that Dr. Burstein's qualifications are a subset of Dr. Whiteside's and Dr. Burstein's testimony is not necessary to replace the "uniquely-qualified" Dr. Laskin. Zimmer claims that Dr. Burstein's expert report solely covers the question of whether two alleged pieces of prior art, the 1978 and 1987 HSS implants, invalidate Zimmer's patent. (Burstein Invalidity Report at 2.) Dr. Laskin opined that those two HSS implants invalidated Zimmer's patent. (*See, e.g.,* Ex. G, June 1, 2007 Laskin Supplemental Invalidity Report at 22, 41-42, 48-49, 84-85, 97, 114.) Dr. Whiteside also opines that those two HSS implants invalidate Zimmer's patent (Whiteside Invalidity Report at 15-33, 36-38) and expressly adopts *all* of Dr. Laskin's invalidity opinions (*id.* at 2).

Zimmer concludes that Dr. Burstein's testimony on this issue is either cumulative of Dr. Whiteside's (and Dr. Laskin's) or beyond the scope of Dr. Laskin's (and Dr. Whiteside's) opinions. Zimmer opines that if Dr. Burstein's testimony is merely cumulative, it violates the Order's requirement that Howmedica replace Dr. Laskin with one expert if possible and no more. (March 14, 2008 Order at 4.) Zimmer argues that to the extent Dr. Burstein offers

something more than Dr. Whiteside, it is impermissible because Dr. Whiteside expressly adopts all of Dr. Burstein's invalidity opinions and the Court specifically limited Howmedica's replacement expert(s) reports' "scope and content to the opinions (and bases therefore) previously disclosed by Dr. Laskin in his expert reports." (March 14, 2008 Order at 6.)

Zimmer notes that Howmedica became aware of the HSS implants, including Dr. Burstein's involvement as the designer, on, at the latest, May 23, 2006. (D. 321, July 10, 2007 Howmedica Response to Zimmer's Motion to Strike at 4.) Subsequently, Dr. Burstein provided a fourteen-page fact declaration about the HSS implants. (May 18, 2007 Decl. of Dr. Albert Burstein.) Zimmer claims that Dr. Burstein's declaration also contained opinions that were not properly disclosed as required by the Federal Rules of Civil Procedure and the Court's orders. (See, e.g., id. at ¶14.) Dr. Burstein also gave fact testimony in a deposition about both HSS implants in response to questions from counsel for both Zimmer and Howmedica. (Ex. G, July 13, 2007 Burstein Dep.) However, Dr. Burstein also occasionally tried to provide expert opinion type testimony at his fact deposition. (July 13, 2007 Burstein Dep. at 88:24-89:17.) But again, Howmedica never offered Dr. Burstein as an expert before the end of expert discovery. (D. 364, April 19, 2007 Scheduling Order.)

In a prior order this Court held that because Dr. Burstein is a fact witness in relation to his alleged involvement in the design of the HSS implants, his fact testimony was appropriate. But his proffered opinions, on the contrary, were inappropriate as he had not provided an expert report. Thus, the Court ruled that those opinions were improper and specifically limited Dr. Burstein's testimony to factual, not expert, testimony:

> Howmedica has represented to the Court that Dr. Burstein is merely a fact witness and not an expert witness and that Dr. Burstein will provide factual descriptions

5

of the 1978 HSS Implant's design and properties, will explain why he designed the implant in the particular manner he chose, will describe features he designed into the 1978 HSS Implant, and will explain the properties and capabilities of the implant that he designed. Insofar as these representations are correct — and the Court finds that they are — Dr. Burstein is properly considered a fact witness and not an expert witness.

(D. 457, January 4, 2008 Order at 9.)

Howmedica also attempted to introduce Dr. Burstein's opinions through Dr. Laskin, by having Dr. Laskin try to parrot them in Dr. Laskin's reports, by citing to Dr. Burstein's May 18, 2007 declaration (*see, e.g.,* June 1, 2007 Laskin Supplemental Invalidity Report at 22, 41-42, 48-49, 84-85, 97, 114) and Dr. Burstein's July 13, 2007 deposition (*see, e.g.*, Ex. H, August 15, 2007 Laskin Report In Reply to Dr. Crowninshield at 8; Ex. I, August 15, 2007 Laskin Report in Reply to Dr. Rand at 23). But in its *Daubert* Order, the Court prohibited Howmedica from permitting Dr. Laskin to testify about those improper, undisclosed opinions of Dr. Burstein. (D. 455, January 2, 2008 Order at 16.) Zimmer argues that Howmedica is now attempting to parlay the unfortunate loss of its expert Dr. Laskin into an opportunity to get Dr. Burstein's previously excluded opinions into the case.

In response to the motion in limine Howmedica first argues that Zimmer will not be prejudiced by Dr. Burstein's invalidity expert report. Zimmer, however, replies that it need not show prejudice but that, in fact, there is prejudice. Zimmer states that considerable time and money will be expended if Zimmer's experts must analyze and rebut the many new facts, opinions and theories in Dr. Burstein's report. Zimmer also claims that it risks prejudice in the form of jury confusion if Dr. Burstein testifies as an "hybrid" expert. *United States v. DeSoto*, 885 F.2d 354, 360 (7th Cir. 1989) (when "two roles are intertwined, the possibility of juror confusion is increased"). However, as Howmedica points out, individuals are frequently allowed

6

to serve as both fact witness and expert witness, especially in patent cases. Princeton Biochemicals, Inc. v. Beckman Coulter, Inc., 2004 U.S. Dist. LEXIS 11918 (D.N.J. June 17, 2004); Kothmann Enters. v. Trinity Indus., 394 F. Supp.2d 923, 930 (S.D. Tex. 2005).

Zimmer contends that the lynchpin of Howmedica's defense is to try to show that a part made from a sketch found in a notebook at HSS was actually implanted into a patient in 1978. Zimmer claims that Howmedica's proof to establish this fact is based almost exclusively on Dr. Burstein's testimony about his alleged recollection of events in 1978, including that documents from that time were "misdated." Burstein Dep. Tr. at 207; *see also* D. 400 at 10. Zimmer argues that Dr. Burstein's fact testimony about these crucial dates is in no way related to his medical qualifications, but will undoubtedly be given undue weight by jurors if he has special expert status. The Court disagrees with Zimmer on this point. It borders on the incredulous to think that any juror would assume that a doctor is an expert at remembering "crucial dates" simply because he is testifying as an expert in a patent case. The assumption is just as likely to be the opposite, i.e., that an expert is an "absent-minded professor" type.

Zimmer also argues that it is prejudiced by the "needless repetition and excessive expense" that would result from yet another new expert report from Howmedica. Zimmer notes that Dr. Laskin submitted ten expert reports in this case. A first round of fact discovery occurred in early 2005. A second round of fact and also expert discovery spanned late 2005 to June 2006, when all fact and expert discovery closed. Yet, fact and expert discovery both were reopened for six more months in 2007 as a result of Howmedica's late addition of the 1978 HSS Implant. Thus, Zimmer claims that since at least early 2007, Howmedica knew of Dr. Burstein and his relevance to the case, yet did not offer him as an expert and sought no more fact discovery than

the declaration he provided voluntarily to Howmedica and his deposition in 2007.

The court finds that while obviously there will be some extra effort and expense required on Zimmer's part to prepare its case against Howmedica's new experts, there is no indication at all that this rises to the level of prejudice. This Court's March 14, 2008 Order set forth the deadlines for all the expert reports and related expert depositions and also limited any replacement expert reports to the scope of Dr. Laskin's previously offered expert opinions. These directives were put in place to address any potential claim of unfair prejudice to Zimmer. Additionally, as Howmedica points out, Zimmer was able to respond to Dr. Whiteside's invalidity reports by referencing prior reports and providing a total of 35 pages. Responding to Dr. Burstein's invalidity report (which considered only the HSS prior art) would have presumably been similarly straightforward.

Howmedica states that it has determined that two experts are necessary and that it considered Dr. Burstein first, but determined that because Dr. Burstein was not a surgeon, that a surgeon expert was also needed to fully address all of the prior art references and invalidity issues. Howmedica claims that Dr. Burstein's expert report purposely is limited to an invalidity analysis based on the HSS prior art because while Dr. Laskin worked at HSS, Dr. Whiteside has had no such experience.

Zimmer, however, counters with the argument that Dr. Laskin did not present any testimony or opinions about the inner-workings of HSS, or anything related to his employment at HSS at all. Zimmer claims that Howmedica does not need another expert with factual knowledge about HSS to replace Dr. Laskin because Dr. Laskin's reports relied upon Dr. Burstein's factual knowledge about HSS and the 1978 HSS Implant (which was allegedly

created in 1978, when Dr. Burstein was employed at HSS).  Zimmer argues that Dr. Whiteside can similarly rely on Dr. Burstein's factual knowledge and that there is no reason to have Dr. Burstein on board as an expert witness.

The distinction that Zimmer is overlooking is that Dr. Laskin worked at HSS and dealt with the hospital's separate engineering biomechanics department, while Dr. Whiteside is a sole practitioner in private practice.  Moreover, according to Howmedica, Dr. Laskin had substantial experience testifying as an expert whereas Dr. Whiteside does not.  Finally, according to Howmedica, Dr. Burstein has substantial experience testifying as an expert.  The court finds these differences substantial enough to permit Howmedica to use Dr. Burstein as an expert witness.  However, the content of his testimony must remain within the parameters of all the Court's prior orders, as applicable.

Howmedica further claims that Dr. Burstein's invalidity expert report is not cumulative of Dr. Whiteside's invalidity expert report and that each of Howmedica's invalidity experts provides a unique perspective.  Dr. Whiteside as a surgeon and Dr. Burstein as an engineer.  Additionally, Howmedica insists that Dr. Burstein's expert report and testimony do not circumvent any prior court rulings.  On December 4, 2007, Zimmer moved to strike the fact declaration and related testimony of Dr. Burstein wherein he discussed the HSS prior art. (See D. 440.) Zimmer attempted to do this by mischaracterizing Dr. Burstein's fact testimony as alleged expert testimony. In denying Zimmer's motion, the Court ruled on January 4, 2008 as follows:

> Howmedica has represented to the Court that Dr. Burstein is merely a fact witness and not an expert witness and that Dr. Burstein will provide factual descriptions of the 1978 HSS Implant's design and properties, will explain why he designed the implant in the particular manner he chose, will describe features he designed into the 1978 HSS Implant, and will explain the properties and capabilities of the implant he designed. Insofar as these representations are correct—and the Court finds that they are—Dr.

9

> Burstein is properly considered a fact witness and not an expert witness. Accordingly, Zimmer's Motion to Strike is denied.

(D. 457 at 9 (emphasis added).)

As Howmedica correctly notes, Zimmer's argument that Howmedica has tried to skirt this Court's prior ruling limiting Dr. Burstein to fact testimony is incorrect. In its January 4th Order, the Court ruled only that Dr. Burstein had not served an expert report and was not offering any expert opinions—not that he could not otherwise be an appropriate expert witness under different circumstances. Prior to Dr. Laskin's death, given the uniqueness of Dr. Laskin's experience and qualifications, Howmedica needed only Dr. Burstein's HSS-related fact testimony. It was not until after Dr. Laskin's death that Howmedica determined that Dr. Burstein would also be needed as an invalidity expert (limited only to the HSS prior art) in order to replace the full extent of Dr. Laskin's previously expected testimony.

Howmedica has assured the court that, to avoid and minimize any potential expert overlap, Dr. Burstein limited his analysis solely to the HSS prior art. That is, he did not address the multitude of additional prior art that also invalidates Zimmer's '313 patent, which is addressed solely by Dr. Whiteside. This court agrees with Howmedica that it has not contradicted any prior Court ruling.

Howmedica next contends that there is no merit to Zimmer's argument that Howmedica is trying to avoid this Court's prior <u>Daubert</u> rulings. This Court previously ruled that:

> Here, Dr. Laskin reviewed Dr. Burstein's testimony and drew inferences from those facts based on his experience as an orthopedic surgeon. And this is not the case where Dr. Laskin has "no opinion of his own." Rather, Dr. Laskin has relied on his several years of experience as an orthopedic surgeon and in the fields of orthopedic surgery and implant design in reaching in [sic] forming his equivalency opinion. It is proper for Dr. Laskin to consider Dr. Burstein's knowledge as an engineer in forming his conclusions.

(D. 455 at 16 ). That is, Dr. Laskin was providing expert opinions based on Dr. Burstein's fact testimony. Howmedica still intends to offer Dr. Burstein's fact testimony at trial. But now that Dr. Laskin is unavailable, Howmedica intends to also call Dr. Burstein as an invalidity expert only insofar as the HSS prior art is involved. Nowhere in the Court's prior <u>Daubert</u> ruling did it ever preclude Dr. Burstein from testifying as an expert under the current circumstances. In fact, the Court's <u>Daubert</u> ruling did not even deal with the propriety of Dr. Burstein's testimony—it was directed only to Dr. Laskin's testimony, and whether Dr. Laskin's reliance on Dr. Burstein's fact testimony was proper. The Court found that it was, and denied Zimmer's motion. This court agrees that Howmedica is not circumventing any prior <u>Daubert</u> ruling.

Accordingly, as there is no undue prejudice to Zimmer, and Howmedica is not improperly contradicting or circumventing any prior ruling of this Court, Zimmer's motion to strike Dr. Burstein and his expert report will be denied.

<u>Conclusion</u>

Based on the foregoing, Zimmer's Motion to Strike the Expert Report and Exclude Expert Testimony of Proffered Expert Albert H. Burstein, Ph.D. [DE 474] is here by DENIED.

Entered: August 29, 2008.

s/ William C. Lee
William C. Lee, Judge
United States District Court