UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| ZIMMER TECHNOLOGY, INC | ) | |
| and ZIMMER, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:02cv425 |
| | ) | |
| HOWMEDICA OSTEONICS CORP., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on three motions in limine filed by Zimmer Technology, Inc., and Zimmer, Inc. ("Zimmer").

Discussion

(1) Zimmer's Motion in Limine No. 1 to Exclude Equivalents Testimony by Dr. Crowninshield in Unrelated Litigation

Zimmer requests an order precluding Howmedica from introducing or referring to (for impeachment or for any other purpose) opinions of and testimony made by Zimmer's expert, Dr. Roy Crowninshield, in the unrelated case of DePuy, Inc. v. Zimmer Holdings, Inc., No. 1:02cv-04023 (N. D. Ill.) ("DePuy"). Zimmer claims that DePuy involved a different patent covering different technology asserted against a different accused product. In DePuy, Crowninshield offered opinions and testimony regarding his analysis under 35 U.S.C. § 112, ¶ 6, which governs the interpretation of means-plus-function claims, in the context of that case. Zimmer objects that Howmedica is now attempting to use that testimony to confuse the jury in the present case.

In DePuy, a Zimmer hip implant was accused of infringing DePuy's U.S. Patent No. 5,370,706 related to hip implant technology. In that litigation, Dr. Crowninshield was asked at a

deposition to identify the means disclosed in the '706 patent specification corresponding to the claim limitation "means for fixedly attaching" in that patent. In response, Dr. Crowninshield identified a threaded end. He was then asked whether a tapered end and threaded end were equivalent in the context of the '706 patent specification. Dr. Crowninshield stated that in his experience it would be very difficult to make a threaded connection neck-to-stem attachment mechanism that could withstand the loading environment that the hip requires.

In the present litigation, where Zimmer's '313 patent is at issue and Howmedica's knee implant is the accused product, Dr. Crowninshield determined that one of ordinary skill in the art would recognize that the Morse taper disclosed in the '313 patent is equivalent, under 35 U.S.C. § 112, ¶ 6, to the thread and locknut connection used in Howmedica's accused knee implants, and that such arrangements are interchangeable in that application.

Zimmer anticipates that Howmedica will attempt to introduce or refer to Dr. Crowninshield's equivalents testimony regarding tapered ends and threaded ends in the DePuy litigation. Zimmer argues that Crowninshield's prior testimony in DePuy is irrelevant to his opinion in this case because the context of the invention must be considered when performing an analysis of equivalent structure under § 112, ¶ 6. Zimmer contends that the fact that the two cases involve different patents and different accused products establishes that the contexts of the analysis are entirely different, and that Howmedica's attempts to conflate the two can only create confusion and may mislead the jury. Zimmer points out that Crowninshield himself has made clear that the question of whether a Morse taper is equivalent to a threaded connection depends on the particular application at hand.

Howmedica, in response, notes that the Federal Circuit has previously held that the '313

patent broadly claims a "modular prosthesis system" that is not limited to knee implants. Zimmer Inc. v. Howmedica Osteonics Corp., 111 Fed. Appx. 593, 595 (Fed. Cir. 2004). Howmedica argues that it is black-letter patent law that patent claims have one meaning, which meaning is wholly independent of the specific product accused of infringement. Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1107, 1118 (Fed. Cir. 1985). Howmedica contends that the broad claim language of the '313 patent encompasses knee implants, hip implants, and any other "modular prosthesis system". Howmedica points out that the term "stem mounting means" must have the same meaning for all modular prosthesis systems, and thus relevant evidence includes any admissions relating to whether a Morse taper is equivalent to a threaded connection in any "modular prosthesis system."

Howmedica argues that Crowninshield has taken inconsistent positions regarding whether Morse taper connections and threaded connections are equivalent in the context of "modular prosthesis systems." In DePuy, Crowninshield stated that Morse taper connections and threaded connections are not equivalent in the context of a particular modular prosthesis system, i.e., hip implants. However, in the present lawsuit, Crowninshield has taken the opposite position, i.e., Morse taper connections and threaded connections allegedly are equivalent in the context of a particular modular prosthesis system, i.e., knee implants. Howmedica argues that Crowninshield's prior inconsistent testimony should be allowed because it goes to a central issue, i.e., the credibility of his expert opinions as it relates to the scope of "stem mounting means" equivalents.

Howmedica maintains that there can be no real dispute that, to the extent Dr. Crowninshield's testimony in this trial is inconsistent with his prior sworn testimony in another

trial, his prior testimony is admissible both for purpose of impeachment under Fed. R. Evid. 613 and Fed. R. Civ. P. 32(2)(2), and substantively under Fed. R. Evid. 801(d)(1)(A) and Fed. R. Civ. P. 32(a)(8). Limsico v. U.S. INS, 951 F.2d 210, 215 (9th Cir. 1991).

Zimmer, however, points out the fatal flaw in Howmedica's argument. Howmedica has blurred and merged the two distinct steps of any infringement analysis. In that two-step process, the court first construes the claims as a question of law. Carroll Touch, Inc. v. Electro Mechanical Sys, Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). The jury then compares the claims as construed to the accused product as a question of fact. Id.

In the present case, Dr. Crowninshield's testimony at issue does not address the legal meaning of any claim limitation. Rather, it comes after a court has construed the claim terms, and relates solely to the comparison of the claim as construed to the accused product, more specifically whether the accused product contains equivalent structure. Zimmer is correct that this is not claim construction and does not concern claim meaning and scope but is a question of fact for the jury. Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1373 (Fed. Cir. 2001).

Contrary to Howmedica's arguments, the law is quite clear that "two structures that are equivalent in one environment may not be equivalent in another." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1436 (Fed. Cir. 2000). Rather, "what constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950). As Zimmer notes, Crowninshield's testimony in each case is different because the cases involve different patents and different accused products, but different does not mean inconsistent.

4

Howmedica's argument that the "scope" of the '313 patent could in theory encompass a hip implant is beside the point, as the scope of the claims is not at issue. What is at issue is only the question of whether Howmedica's knee implants have equivalent structure. Two structures that are equivalent in a knee environment may not be equivalent in a hip environment. IMS, 206 F.3d at 1436. This court agrees with Zimmer that allowing Howmedica's use of the DePuy testimony only invites a mini-trial on the DePuy patent, and the claim construction and accused products in that case, and the differences between that case and this one. The probative value of the testimony at issue is substantially outweighed by the risk of unfair prejudice and jury confusion. Accordingly, Zimmer's motion in limine on this issue will be granted. Howmedica will not be permitted to present evidence of or refer to Dr. Crowninshield's deposition testimony and opinions from the DePuy litigation during both Phase 1 and Phase 2 trials.

(2)  Zimmer's Motion in Limine No. 4 to Preclude Argument That the 1991 Howmedica Custom Implant is Prior Art Under 35 U.S.C. § 102(g)

Zimmer requests an order precluding Howmedica from arguing during the Phase 1 trial that the alleged prior art reference referred to as the 1991 Howmedica Custom Implant is prior art under 35 U.S.C. § 102(g). Zimmer argues that at no earlier time has Howmedica asserted or identified that this reference was prior art, and that Howmedica expressly waived this argument in response to Zimmer's motion for summary judgment on the issue and should not be permitted to now assert the argument.

Zimmer states that it does not contest that one issue for trial is whether the 1991 Howmedica Custom Implant is prior art under § 102(a). But Howmedica now, for the first time, seeks to add the additional theory that the implant qualifies as prior art under § 102(g), a separate legal provision invoking different legal standards and different factual showings.

5

Howmedica acknowledges that in response to the summary judgment motion it stated that it was not asserting any § 102(g) defense with respect to the 1991 Howmedica implant. However, Howmedica claims that whether the 1991 Howmedica implant constitutes a § 102(g) "defense" is a completely separate issue from whether the 1991 Howmedica implant is "prior art" under § 102(g) for purposes of Howmedica's § 103(a) invalidity defense. Howmedica claims that is has always asserted and has never waived this argument. Howmedica states that Zimmer has known since at least 2005 that it is asserting a § 103 invalidity defense based in part upon the prior art 1991 Howmedica implant and thus it cannot come as a surprise that it is also asserting that the 1991 Howmedica implant is prior art to the '313 patent under § 102(g) for purposes of its § 103(a) obviousness defense.

Zimmer accuses Howmedica of attempting to completely re-write the record in this case and ignoring this court's rulings on summary judgment. Zimmer agrees that it knew Howmedica intended to assert a § 103 argument incorporating the 1991 Howmedica Custom Implant as an alleged prior art reference from early in the case, and that was exactly why Zimmer moved for summary judgment in January of 2006 on the issue that the 1991 Howmedica implant was not prior art at all. In its ruling, this court held that the 1991 Howmedica implant could be prior art to be "considered as part of an obviousness analysis" only under § 102(a). (DE 348 at 22). Thus Zimmer is not attempting to preclude Howmedica from relying on the 1991 Howmedica implant as part of an obviousness analysis, but to do so Howmedica must first prove that the reference is prior art under § 102(a). Zimmer seeks to preclude Howmedica from arguing that even if the reference is not § 102(a) prior art it is still § 102(g) prior art.

This court agrees with Zimmer. The ruling on summary judgment specifically precludes

6

Howmedica from arguing that the 1991 Howmedica implant can be used in a § 103(a) obviousness defense unless it is proven to be § 102(a) prior art. Accordingly, Zimmer's motion in limine will be granted.

(3)  Zimmer's Motion in Limine No. 7 to Preclude References to DOJ Investigations and Related Allegations

Zimmer requests an order prohibiting Howmedica from introducing or referring to, in either the Phase 1 or Phase 2 trials, the United States Department of Justice investigations or agreements regarding physician payments in the orthopedic field, to the Intermedics-McCullough litigation also relating to such payments, or any other reference to alleged improper physician payments in the orthopedic industry[1]. Zimmer argues that these allegations have nothing to do with the substantive issues of this patent infringement case, and there is no linkage between the two cases.

In response, Howmedica states that Zimmer alleges that its NexGen system is commercially successful based on features including its offset adapter component. Howmedica argues that it is clear from the DOJ investigations of Zimmer and the Intermedics-McCullough

---

[1] According to Zimmer, there were industry-wide investigations by the U.S. Attorney for the District of New Jersey regarding alleged payments to physicians in exchange for their exclusive use of products manufactured by the five largest orthopedic manufacturers, including Stryker (Howmedica's parent company) and Zimmer. The resolution of the investigations included a deferred prosecution agreement for Zimmer (and the other three companies), a non-prosecution agreement for Stryker, and five-year corporate integrity agreements for all companies. Zimmer states that Howmedica has ignored the fact that the government has released Zimmer from the DOJ allegations while Stryker continues to face DOJ scrutiny. For example, in November 2007, Stryker agreed to pay $16.6 million to settle allegations that none of its divisions submitted false claims to Medicare and other federal health care programs. Also, Stryker continues to be under DOJ investigation for payments of bribes to foreign doctors in exchange for use of its products and recently filed suit in response to outstanding DOJ subpoenas.

litigation that Zimmer's sales are largely due to Zimmer physician payments, and that this evidence rebuts Zimmer's commercial success arguments.

Howmedica states that it does not anticipate referencing these investigations absent Zimmer making arguments at trial that its NexGen system is commercially successful because of its offset adapter component. Howmedica contends that if Zimmer makes such an argument, then Howmedica should be allowed to reference these investigations as proof that any commercial success was due to physician payments and not due to the offset adapter component.

Zimmer, however, argues that Howmedica has not shown that the DOJ investigations and related litigation are relevant to this lawsuit, as it has no evidence of the impact of the alleged physician payments. Zimmer contends that this evidence is by its nature highly prejudicial, and any potential relevance of these matters to this litigation is further negated by the fact that the DOJ investigations targets both Howmedica and Zimmer, and both are defendants in the related litigation. Zimmer further points out that this is the first time that Howmedica has raised this as an issue, as it failed to make any mention of DOJ investigations and related litigation in its discovery responses or expert reports and Howmedica has no evidence of any impact of the alleged activities on Zimmer's commercial success.

Clearly, Zimmer is correct. The evidence of the DOJ investigations and related litigation is highly prejudicial and has very limited probative value in this case. Howmedica has not shown how the evidence is relevant to the issues in this case, and it is clear that the evidence has a high potential to confuse and mislead the jury. Accordingly, Zimmer's motion in limine will be granted.

## Conclusion

On the basis of the foregoing the court rules as follows:

(1) Zimmer's Motion in Limine No. 1 [DE 530] is hereby GRANTED;

(2) Zimmer's Motion in Limine No. 4 [DE 524] is hereby GRANTED; and

(3) Zimmer's Motion in Limine No. 7 [DE 527] is hereby GRANTED.


Entered: November 25, 2008.

                                                      s/ William C. Lee
                                                      William C. Lee, Judge
                                                      United States District Court